. COMMONWEALTH *vs.* ALISSA CHARLES.

No. 97-P-1442.

Suffolk. March 9, 1999. - June 25, 1999.

Present: PERRETTA, PORADA, & LENK, JJ.

*Evidence,* Redirect examination, Relevancy and materiality. *Practice, Criminal,* Instructions to jury, Lesser included offense. *Assault and Battery by Means of a Dangerous Weapon. Homicide.*

At the trial of an indictment for murder in the first degree, the judge erred in refusing to allow the defendant to explain her conduct on redirect examination to meet the inference of recent contrival or prior inconsistent statements raised by the prosecutor on cross-examination [192-193], and the issue was sufficiently preserved for appellate review [193]: the error was prejudicial and a new trial was required [193-194].

At the trial of an indictment for murder in the first degree, the judge should have instructed the jury on the elements of assault and battery by means of a dangerous weapon as a lesser included offense. [194-195]

INDICTMENT found and returned in the Superior Court Department on May 4, 1994.

The case was tried before *Sandra L. Hamlin,* J.

*Carlo A. Obligato,* Committee for Public Counsel Services, for the defendant.

*Jane A. Sullivan,* Assistant District Attorney, for the Commonwealth.

PORADA, J. On an indictment· charging the defendant with murder in the first degree of Calvin Henderson, a Suffolk County jury returned a verdict of guilty of voluntary manslaughter. On appeal from this conviction, the defendant claims the judge erred in refusing to allow the defendant to present rehabilitating testimony on redirect examination and in failing to instruct the jury on assault and battery by means of a dangerous weapon as a lesser included offense of the indictment for murder. We reverse.

1. *Rehabilitation testimony.* During the Commonwealth's

presentation of its evidence, the prosecutor played a tape to the jury of a statement made to the police by the defendant on the morning following Henderson's death. In the taped interview, the defendant described what happened between the decedent and herself. At trial, the defendant recounted what happened the night Henderson died. On cross-examination by the prosecutor, the defendant acknowledged that a number of salient facts to which she testified at trial were omitted from her taped statement. Among those omissions were statements that she knew that the decedent had a history of violence and possessed a gun; that the decedent had kicked her in the back and in her ankle and choked her sister prior to her pulling out her knife; and that the decedent fell on her open knife during their confrontation. Following the prosecutor's cross-examination, defense counsel asked the defendant what the police detective had said to her before taking her taped statement. Over the prosecutor's objection, the defendant responded: "He told me that it just sounded like an argument that had got out of control and that everything was going to be all right." The prosecutor renewed her objection and moved to strike the answer on the grounds that it was rank hearsay and opinion evidence. Defense counsel countered that the response was admissible because "[b]oth sides of the interview are equally admissible. I mean, they want to put in her side of the interview without putting in the other side of the interview. And I think it goes to what she said in the interview, what was said to her. It's simply putting it in context." The judge then sustained the objection, allowed the motion to strike, and instructed the jury that it was "for you to determine what happened in the case."

The judge should not have allowed the motion to strike. "It is well established that a witness may explain, modify, or correct damaging testimony that was elicited on cross-examination." *Commonwealth* v. *Helfant*, 398 Mass. 214, 222 (1986), quoting from *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982). On redirect, a witness should have the opportunity to explain why he or she did or did not do certain things which were the subject of questioning on cross-examination. *Commonwealth* v. *Hoffer*, 375 Mass. 369, 375 (1978). *Commonwealth* v. *Dougan*, 377 Mass. 303, 309 (1979). Here the testimony was admissible to overcome the reasonable inferences raised by the prosecutor's cross-examination that the defendant's trial testimony was recently contrived or that the

defendant's taped statement constituted a prior inconsistent statement. *Commonwealth* v. *Hoffer*, 375 Mass. at 376. *Commonwealth* v. *O'Brien*, 419 Mass. 470, 476 (1995).

The Commonwealth argues that the defendant is precluded from raising the admissibility of this evidence on appeal because the defendant did not properly preserve the issue for appellate review. See *Commonwealth* v. *Casavant*, 426 Mass. 368, 369-370 (1998). While defense counsel's argument opposing the motion to strike could have been phrased in more precise and artful terms, we think that the defendant's argument was sufficient to apprise the judge of the grounds argued on appeal for the admissibility of this evidence by defense counsel's words that the testimony "goes to what [the defendant] said in the interview, what was said to her. It's simply putting it in context." To rule otherwise would exalt form over substance. *Commonwealth* v. *Spear*, 43 Mass. App. Ct. 583, 589 n.8 (1997).

The question then becomes whether the exclusion of this evidence prejudiced the defendant.[1] In light of the jury's verdict of voluntary manslaughter, we do not see any prejudice to the defendant that may have arisen from her failure to explain why she had omitted to tell the police in her taped statement that she knew the decedent had a history of violence and possessed a gun or that before she opened her knife the decedent had hit her in the back and in the ankle and had attempted to choke her sister. There is, however, a serious question whether she was prejudiced by her inability to offer as a possible explanation for her failure to tell the police the officer's comment to her. From this comment, one could draw the inference that she had no need to exculpate herself. Although the primary defense in this case was self-defense, the defendant did present evidence that, of the wounds suffered by the decedent, the only wound that was fatal was the decedent's chest wound and that the decedent suffered this wound when he fell on the defendant's open knife. If the jury believed this evidence, then a not guilty verdict was possible on the ground that the decedent's death was accidental. Accordingly, the defendant's credibility on this issue was a major factor.

During the trial, the defendant did explain that at the time of

---

[1]Both the Commonwealth and the defendant treat this issue in summary fashion. The defendant simply argues that the error violates the defendant's constitutional rights and thus constitutes reversible error. The Commonwealth argues that if there was error, the error did not create a miscarriage of justice.

the taped interview she was upset and did not know that the decedent had been stabbed in the chest and the police did not tell her that he had been. Further, without objection, she was allowed to testify that she had told the truth both in her taped interview and on the stand. Nevertheless, we cannot say that this error did not possibly weaken her case in any significant way, *Commonwealth* v. *Helfant,* 398 Mass. at 224, because of the prosecutor's emphasis in her closing argument on the omission of this explanation from the defendant's taped interview. During her argument, the prosecutor on two occasions stressed that this was the most glaring omission in her taped interview and suggested that the defendant not only lied when she said she ·did not know that the decedent had been stabbed in the chest but also lied when she said he fell on the knife in light of the depth and nature of the wound. The prosecutor also argued that if the decedent had fallen on the knife one would think that would have been one of the first things that the defendant would have wanted to tell the police. In light of the emphasis placed on the omission of this statement from the taped interview, we conclude the error was prejudicial to the defendant.

2. *Assault and battery by means of a dangerous weapon.* The defendant argues that the judge erred in refusing to give an instruction on assault and battery by means of a dangerous weapon as a lesser included offense of the indictment charging murder and manslaughter. Relying on *Commonwealth* v. *Walker,* 426 Mass. 301, 304-305 (1997), the defendant argues that in determining whether an offense is a lesser included offense of the crime charged, one must no longer look solely to the elements of the offense charged but also to the substantive facts to see if the defendant's conduct supports identical elements of both offenses except for the aggravating factors that distinguish the greater from the lesser, similar to a determination whether two offenses are duplicative of one another. We need not determine whether the defendant's argument is correct, for it is a well-established principle that assault and battery is considered a lesser included offense of the crime of murder. *Commonwealth* v. *Myers,* 356 Mass. 343, 350 & n.1 (1969). *Commonwealth* v. *Smith,* 37 Mass. App. Ct. 10, 13 (1994). Because assault and battery by means of a dangerous weapon is simply an aggravated form of assault and battery, see *Commonwealth* v. *Clarke,* 162 Mass. 495, 495 (1895), it follows logically that in certain circumstances it may also be considered a lesser included

offense within the crime of murder and manslaughter. Cf. *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 n.3 (1986); *Commonwealth* v. *Walker*, 426 Mass. at 303 (indecent assault and battery of a child under fourteen considered lesser included offense of forcible rape of a child under sixteen years). Nevertheless, this does not end our discussion for we must still determine whether there was any rational hypothesis in the evidence warranting this instruction, *Commonwealth* v. *Donovan*, 422 Mass. 349, 352 (1996), or, as formulated in the *Myers* decision, whether "the evidence raises a reasonable doubt that the acts of the defendant did not cause the victim's death." *Commonwealth* v. *Myers*, 356 Mass. at 350.

Mindful of the public policy favoring instructions on lesser included offenses, *Commonwealth* v. *Walker*, 426 Mass. at 305, and concluding that the series of wounds were so closely related and intertwined as to constitute a single criminal episode, we decide that the instruction should have been given because there was an issue whether the defendant's act caused the decedent's death. In this case, the medical examiner testified that the decedent died from multiple stab wounds but also testified that of the four wounds suffered by the decedent only the chest wound was fatal. The defendant testified that in order to stop the decedent from attacking her, she stabbed him once in the armpit and once in the lower side but did not stab him in the chest. She also testified that the decedent received the fatal chest wound when he stumbled and fell on top of her when she was holding the knife. If the jury believed that the chest wound was the sole cause of the decedent's death and resulted from a fall instead of the defendant's action, thus raising the probability of accident, but did not believe that the defendant acted in self-defense in stabbing the decedent twice, then there was a rational basis in the evidence for instructing on assault and battery by means of a dangerous weapon. Accordingly, the instruction requested by the defendant should have been given.

*Judgment reversed.*

*Verdict set aside.*