## COMMONWEALTH *vs*. THOMAS MORIN.

No. 99-P-1919.

Hampden. July 17, 2001. - October 10, 2001.

Present: GREENBERG, SMITH, & COWIN, JJ.

*Evidence,* Cross-examination. *Practice, Criminal,* Indictment, Duplicative convictions. *Assault and Battery. Indecent Assault and Battery. Assault with Intent to Rape.*

At a trial of indictments for assault with intent to rape, indecent assault and battery, and assault and battery, the judge incorrectly restricted defense counsel's line of inquiry with respect to the complainant's allegedly abusive relationship with her boyfriend, proffered as a motive for her to lie, where such restriction deprived the defendant of an opportunity to present sufficient information to the jury for it to make a discriminating appraisal of the complainant's motive to lie, and where it could not be said that this information would not have had a material impact on the jury's decision; the error required reversal of the convictions. [783-785]

Indictments for indecent assault and battery, and assault and battery, were not, on the facts presented, duplicative, and it was permissible to sentence the defendant on both convictions, where the defendant's actions in committing the assault and battery were factually distinct from his actions in committing the indecent assault and battery and were not so closely related as to constitute a single course of conduct. [785-787]

This court concluded that, at a retrial on the indictments for assault with intent to rape and indecent assault and battery, if the defendant is convicted of assault with intent to rape and indecent assault and battery, he cannot be sentenced on the indecent assault and battery conviction because it is duplicative of the assault with intent to rape conviction, where the defendant's actions that constituted the indecent assault and battery were factually indistinguishable from his actions comprising the assault with intent to commit rape. [787-788]

INDICTMENTS found and returned in the Superior Court Department on July 28, 1998.

The cases were tried before *C. Brian McDonald*, J.

*James Hammerschmith*, Committee for Public Counsel Services, for the defendant.

*Bethany C. Lowe*, Assistant District Attorney, for the Commonwealth.

SMITH, J. After a jury trial in Superior Court, the defendant, Thomas Morin, was found guilty of assault with intent to rape, indecent assault and battery, and assault and battery.[1] The defendant was sentenced to two consecutive terms of two and one-half years in a house of correction for the assault with intent to rape and indecent assault and battery convictions. The term for the assault and battery conviction was a split sentence: one year to be served directly and the remainder suspended under probationary conditions for five years, concurrent with the indecent assault and battery conviction.[2]

On appeal, the defendant argues that the trial judge erred when he refused to allow defense counsel to cross-examine the complainant about her tumultuous relationship with her boyfriend. The defendant also claims that the indictments charging indecent assault and battery and assault and battery should be dismissed as duplicative. The defendant also argues that there was duplication between the indecent assault and battery indictment and the assault with intent to commit rape indictment.

The Commonwealth introduced the following evidence. On July 9, 1998, the complainant was in her boyfriend's apartment at 112 Lawton Street in Springfield. On that afternoon, the complainant was taking a nap before preparing dinner and going to work as a bartender.

At approximately 4:00 P.M., the complainant was asleep when she heard a knock on the front door of the apartment. When she looked through the peephole, she saw the back of a man's head and believed it to be the man who lived in the apartment across

---

[1]Before the trial commenced, the Commonwealth filed a nolle prosequi as to an indictment charging the defendant with breaking and entering in the daytime.

[2]We have identified an error in the docket and in the mittimus in regard to the judge's sentence on the assault and battery conviction.

It is clear from the trial transcript that the judge intended that the one-year sentence of imprisonment on the assault and battery charge was to be served on and after the other sentences.

The clerk, however, wrote on the docket that the one-year sentence was to be concurrent with the indecent assault and battery conviction. The mittimus also incorrectly indicates a one-year concurrent sentence.

the hall. The complainant unlocked the door and began to open it. As she did so, the defendant pushed the door inward, knocking her backward with force, and entered the apartment, locking the door behind him.

The complainant was familiar with the defendant, although she did not know his name at that time. She knew that he did not live in the building, but that he occasionally stayed in a friend's apartment on the first floor.

Once the defendant was inside the apartment, the defendant grabbed the complainant around the right arm, in the area of her wrist, and refused to release her, despite her protests. As the complainant struggled, the defendant reached for her chest, touching her breasts several times outside her clothing. The defendant also grabbed at the bottom of the complainant's shorts several times. On two occasions, the defendant put his hand up the complainant's shorts and his hand came into contact with her underwear in the area of her hip. Twice the complainant managed to unlock the door to her apartment, but each time the defendant locked it. Throughout this attack, the complainant yelled at the defendant to stop and ordered him to leave the apartment, while fending off his advances. The defendant is over six feet tall and the complainant is just over five feet tall.

As the defendant attempted to pull the complainant's shorts down, he told her that "he knew that [she] wanted it" and that "he wanted to screw [her] in the ass." The defendant also said that he knew her boyfriend was not expected to arrive home until 5:30 P.M., and that they could do it when she got back from work at approximately 3:30 A.M. if she preferred. The complainant then realized that the defendant was familiar with her work schedule, as well as that of her boyfriend. She finally managed to unlock the door and pull it open slightly. She screamed into the hallway. The defendant immediately let go of her arm, left the apartment, and walked down the stairs.

Approximately ten to fifteen minutes later, the complainant heard her boyfriend's father call out to her from the parking lot below the apartment. She went to the window and asked him to come upstairs. The complainant's boyfriend then arrived and both men went up to the apartment. The complainant told her boyfriend and his father what the defendant had done. The

complainant telephoned her landlady, Patricia Drake, and reported to her that a man staying in the first-floor apartment had attacked her. According to Drake, the complainant sounded very upset, excited, agitated, and scared over the telephone. She arrived at the apartment building within minutes of the telephone call and went directly to the apartment where the defendant was staying. Drake spoke with the defendant and informed him of the complainant's accusation. The defendant responded that the complainant was always knocking on his door and asking for it.

The complainant had also telephoned the police department to report the incident. At approximately 5:00 P.M., two police officers arrived on the scene and spoke with the complainant. Officer Terzi found her visibly upset, crying, fidgeting, and with red eyes, as if she had been crying for a period of time. The officers also spoke with the defendant and placed him under arrest.

The defendant testified that the complainant had invited him into her apartment to watch television. Approximately ten minutes later, the complainant heard a vehicle pull into the apartment's parking lot and told the defendant he would need to leave. The defendant went out using the back door and saw no one on the back stairway as he left. The defendant denied forcing himself into the complainant's apartment and denied that there had been any sexual assaults.

1. *Cross-examination of the complainant.* The defendant argues that he was improperly denied his right to cross-examine the complainant because the trial judge refused to allow him to question her about her allegedly abusive relationship with her boyfriend. The defendant argues that the couple's tumultuous relationship provided a motive to the complainant to invent the incident because after her boyfriend arrived home unexpectedly, she feared he would punish her for socializing with the defendant.[3]

At trial, the defendant made an offer of proof by producing a

[3]The Commonwealth claims that the defendant did not preserve this issue for appeal because, at trial, defense counsel stated that the cross-examination of the complainant was necessary to show bias, i.e., that the complaining witness fabricated the rape allegation to elicit sympathy from her boyfriend.

Indeed, a defendant "is not permitted to raise an issue before the trial court on a specific ground, and then to present that issue to this court on a different ground." *Commonwealth* v. *Tyree*, 387 Mass. 191, 213 (1982), cert. denied,

certified record of a conviction of the complainant's boyfriend for assault and battery against the complainant on December 15, 1998, some five months after the incident for which the defendant was being tried. On the date that the complainant brought the complaint against her boyfriend, she also took out a restraining order. In the affidavit in support of her restraining order, the complainant described an ongoing abusive relationship between her and her boyfriend, dating back three years. Thus, her affidavit encompassed a period of time before and during the time that the alleged sexual assault by the defendant took place.

"A defendant has the *right* to bring to the jury's attention any 'circumstance which may materially affect' the testimony of an adverse witness which might lead the jury to find that the witness is under an 'influence to prevaricate' " (emphasis in original). *Commonwealth* v. *Haywood*, 377 Mass. 755, 760 (1979), quoting from *Commonwealth* v. *Marcellino*, 271 Mass. 325, 327 (1930). *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. 49, 52 (1992). This principle is particularly important when the charge is rape, because the "right to cross-examine a complainant . . . to show a false accusation may be the last refuge of an innocent defendant." *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. at 52, quoting from *Commonwealth* v. *Elliot*, 393 Mass. 824, 828 (1985).

In *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. at 51, the defendant contended that the complainant had lied about the rape allegation because she was afraid of her boyfriend. After the defendant's offer of proof that fear of her boyfriend might account for the complainant's denial of the intercourse as consensual, the judge only allowed the defendant to inquire whether the complainant's boyfriend had ever beaten her. *Ibid.*

459 U.S. 1175 (1983). While defense counsel's argument could have been phrased in "more precise and artful terms," we think that the defendant's argument and offer of proof was sufficient to apprise the judge of the ground argued on appeal that the complainant fabricated the rape allegation to protect herself from her abusive boyfriend in case he discovered her with the defendant. *Commonwealth* v. *Charles*, 47 Mass. App. Ct. 191, 193 (1999). "To rule otherwise would exalt form over substance." *Commonwealth* v. *Spear*, 43 Mass. App. Ct. 583, 589 n.8 (1997). *Commonwealth* v. *Charles*, 47 Mass. App. Ct. at 193.

After the complainant affirmed that she had been beaten by her boyfriend, the defendant was ordered to terminate questioning the complainant further regarding her relationship with her boyfriend. *Id.* at 51-52. We held that the judge's foreclosure of the line of inquiry constituted prejudicial error. *Id.* at 52.

Here, as in *Kowalski*, the trial was a duel of credibility. Thus, in order for the defendant to be acquitted, the jury would have to disbelieve the complainant. By limiting the defendant's probing of the tumultuous relationship between the complainant and her boyfriend, the judge deprived the defendant of an opportunity to present sufficient information to the jury for it to make a discriminating appraisal of the complainant's motive to lie. *Commonwealth* v. *Elliot*, 393 Mass. at 831. *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. at 52. We cannot say that this information would not have had a material impact on the jury's decision. *Commonwealth* v. *Kowalski*, 33 Mass. App. Ct. at 52. See *Commonwealth* v. *Stockhammer*, 409 Mass. 867, 879 (1991).[4] We conclude, therefore, that the judge committed error in restricting the defendant's cross-examination, and therefore there must be a new trial.

2. *Duplicative indictments.* On appeal, the defendant claims for the first time that the indictments charging assault and battery and indecent assault and battery should have been dismissed because the assault and battery indictment was duplicative[5] of the indecent assault and battery indictment and that indictment

---

[4]The Commonwealth argues that *Kowalski* is inapposite because there was no evidence that the complainant's boyfriend knew that the defendant had been present in the apartment, thus vitiating her motive to lie about his presence. If the defendant's story is believed, however, the complainant could not have known whether her boyfriend would encounter the defendant on the stairwell. Thus, the motive to lie was created before the complainant knew that the defendant, in fact, did *not* encounter her boyfriend on the stairwell. In any event, if, on the facts, there is a possibility of bias, even a remote one, the judge has no discretion to bar all inquiry into the subject. *Commonwealth* v. *Tam Bui*, 419 Mass. 392, 400, cert. denied, 516 U.S. 861 (1995). *Commonwealth* v. *Allison*, 434 Mass. 670, 681 (2001).

[5]Massachusetts case law appears to interchange "duplicative" and "duplicitous" to describe some situations where, in a single proceeding, a defendant is convicted and sentenced for two offenses arising out of the same act. Compare *Commonwealth* v. *Britto*, 433 Mass. 596, 597 (2001), and *Commonwealth* v. *Zane Z.*, 51 Mass. App. Ct. 135, 141 (2001), with *Commonwealth* v. *Snow*, 35

was duplicative of the assault with intent to commit rape.[6] Because the defendant did not raise this claim below, if we find there is error we then consider whether it created a substantial risk of miscarriage of justice. *Commonwealth* v. *Thomas*, 401 Mass. 109, 119 (1987).

It has not been uncommon in Massachusetts for a defendant to be indicted and tried in a single proceeding for multiple crimes that constitute the "same offense" for double jeopardy purposes. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 385 (1998), and cases cited. "While such duplicative charges, if pressed in successive trials, would violate the double jeopardy rule, there is no constitutional or common law infraction where (1) all of the indictments are tried in a single proceeding and (2) the defendant ultimately is not subjected to multiple penalties for the same offense." *Ibid.* Here, there is no question that the defendant lawfully was tried for the crimes of assault and battery, indecent assault and battery, and assault with intent to rape because all of those charges were pressed in a single trial. The question here is whether the defendant was subjected to multiple punishments for convictions arising out of the same act.

The traditional rule in Massachusetts, as embodied by *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871) (and its progeny), is that a defendant may properly be punished for two crimes arising out of the same course of conduct "provided that each requires proof of an element that the other does not." *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. at 385. So long as each offense includes an additional element that the other does not, "neither crime is a lesser-included offense of the other, and convictions on both are deemed to have been authorized by the Legislature and hence not duplic[ative]." *Id.* at 386, quoting from *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981).

Mass. App. Ct. 836, 841 (1994), and *Commonwealth* v. *Terrelonge*, 42 Mass. App. Ct. 941, 941 (1997).

[6]The Commonwealth concedes that the trial judge failed to instruct the jury that the convictions must be based on separate acts. See *Commonwealth* v. *Thomas*, 400 Mass. 676, 681-682 (1987); *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381 (1989). Because we are reversing on other grounds, we need not address whether that failure created a substantial risk of a miscarriage of justice. At a retrial of the within indictments, however, the trial judge should give a "separate acts" instruction.

In addition to the *Morey* rule, the court also, at times, considers whether the actions of the defendant were so closely related in fact as to constitute in substance but a single crime. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979). *Commonwealth* v. *Thomas*, 401 Mass. at 120. In such a case, a defendant cannot properly be sentenced on both convictions. *Commonwealth* v. *Thomas*, 401 Mass. at 120. The appropriate remedy, if there have been duplicative convictions, is to vacate both the conviction and sentence on the lesser-included offense. *Commonwealth* v. *Jones*, 382 Mass. at 394-395. *Commonwealth* v. *Pinero*, 49 Mass. App. Ct. 397, 400 (2000). The remedy applies to duplicative convictions with consecutive as well as concurrent sentences. *Commonwealth* v. *Cabral*, 46 Mass. App. Ct. 917, 919 (1999).

*a. Indecent assault and battery and assault and battery convictions.* Assault and battery is a lesser included offense of indecent assault and battery because assault and battery does not require proof of any element not required to establish indecent assault and battery. Compare G. L. c. 265, § 13H, with G. L. c. 265, § 13A. But here, the defendant's actions in committing the assault and battery were factually distinct from his actions in committing the indecent assault and battery. More specifically, when the defendant grabbed the complainant's arm and wrist to restrain her, he assaulted and battered her. When he touched her breasts, he committed indecent assault and battery. These two touchings were factually distinct and not so closely related as to constitute a single course of conduct. As such, it was permissible to sentence the defendant on both convictions.

*b. Assault with intent to rape and indecent assault and battery convictions.* The defendant acknowledges that the offenses of assault with intent to rape and indecent assault and battery have mutually exclusive elements so neither is technically a lesser included offense of the other. Compare G. L. c. 265, § 24, with G. L. c. 265, § 13H. Nevertheless, the defendant contends that both convictions are based on the same conduct, citing *Commonwealth* v. *St. Pierre*, 377 Mass. at 662-663. The Commonwealth argues that the defendant's actions in indecently as-

saulting and battering the complainant by touching her breasts were factually distinct from the defendant's locking the complainant in her apartment, telling her he wanted to have anal sex with her, and attempting to pull down her gym shorts.

We agree with the defendant. We think that the defendant's actions that constituted the indecent assault and battery, i.e., touching the complainant's breasts, and the actions comprising the assault with intent to rape, i.e., locking the complainant in her apartment, telling her he wanted to have anal sex with her, and attempting to pull down her gym shorts, were factually indistinguishable. In that regard, the defendant's actions were "so closely related in fact as to constitute in substance but a single crime." *Commonwealth* v. *St. Pierre*, 377 Mass. at 662-663. *Commonwealth* v. *Thomas*, 401 Mass. at 120. *Commonwealth* v. *Pinero*, 49 Mass. App. Ct. at 399-400.

Thus, at a retrial on the above indictments, if the defendant is convicted of assault with intent to rape and indecent assault and battery, he cannot be sentenced on the indecent assault and battery conviction because it is duplicative of the assault with intent to rape conviction.

*Judgments reversed.*

*Verdicts set aside.*