COMMONWEALTH *vs.* ERIC M. PIMENTAL.

Plymouth. April 10, 2009. - August 3, 2009.

Present: MARSHALL, C.J., SPINA, COWIN, BOTSFORD, & GANTS, JJ.

*Homicide. Practice, Criminal,* Argument by prosecutor, Jury and jurors, Lesser included offense, Capital case. *Assault and Battery by Means of a Dangerous Weapon. Robbery.*

At a murder trial in which the Commonwealth alleged that the defendant and a companion participated in an attack on the victim, the judge did not err in declining to permit the defendant to introduce third-party culprit evidence (specifically, that some months earlier the defendant had prevented his companion from attacking another person), where, even assuming that the rule admitting such evidence had application to the instant case, the defendant failed to demonstrate that the acts were closely connected in point of time and method of operation. [478-479]

This court again declined to hold that unrecorded statements to police are per se inadmissible. [479-480]

Evidence at a criminal trial was sufficient to demonstrate that the defendant had the requisite state of mind to support convictions of murder in the first degree and armed robbery under either a principal or joint venture theory of liability. [480-481]

There was no merit to a criminal defendant's contention that the jury at his murder trial should have been instructed on assault and battery by means of a dangerous weapon as a lesser included offense. [481-482]

At a criminal trial, certain remarks by the prosecutor in her closing argument were not impermissibly speculative [482-483]; further, one minor misstatement, although improper, created no likelihood of a miscarriage of justice, as the prosecutor's underlying point remained valid [483-484], and the prosecutor's stray reference to certain admissions, which received no further emphasis, did not, in context, result in a substantial likelihood of a miscarriage of justice [484].

No error arose at a criminal trial from the judge's instructions to the jury that they had an obligation to return a verdict of the highest degree of murder proved beyond a reasonable doubt. [484-485]

INDICTMENTS found and returned in the Superior Court Department on June 24, 2004.

The cases were tried before *Linda E. Giles*, J.

*Stephen Paul Maidman* for the defendant.

*Mary E. Lee*, Assistant District Attorney, for the Commonwealth.

BOTSFORD, J. On the morning of June 10, 2004, Thomas Loftus was found beaten to death in a wooded area in Wareham. Evidence presented at trial showed that the defendant and a companion, Robert Silva, both participated in the attack, and that Silva then removed money and property from the victim and shared it with the defendant. A jury convicted the defendant of murder in the first degree committed with extreme atrocity or cruelty, and armed robbery. On appeal, the defendant argues that (1) he should have been permitted to introduce evidence of a prior event in which he prevented Silva from attacking another person; (2) his statements to police should not have been admitted, because they were not electronically recorded; (3) the evidence was insufficient to support either conviction; (4) the jury should have been instructed on assault and battery by means of a dangerous weapon, as a lesser included offense of murder; (5) the prosecutor made various inappropriate remarks in her closing argument; and (6) the jury should not have been instructed that they had an obligation to return a verdict of the highest degree of murder proved beyond a reasonable doubt. We reject the defendant's arguments, and after carefully reviewing the entire case, we decline to exercise our authority under G. L. c. 278, § 33E, to reduce the degree of guilt or order a new trial.

*Background.* Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following.

On the afternoon of June 9, 2004, the defendant, who was then eighteen years old, was drinking liquor at his home in Wareham. He left his home and met up with Silva, and the pair walked down a wooded path in Wareham, where they encountered the victim. The defendant was approximately six feet, two inches tall, weighed approximately 248 pounds, and wore size sixteen sneakers. Although he had been drinking, he did not have any difficulty speaking or walking. Silva was about five feet, eight inches tall, and weighed 160 to 170 pounds; he was about the defendant's age. The victim was forty-seven years old, five feet, five inches tall, and weighed 126 pounds. At the time of the autopsy, the victim's blood alcohol level was .278.

The defendant did not testify, but in the two days following the incident he made various statements to certain friends and

family members, consistently indicating that the victim had initiated a confrontation. He told his cousin, Melissa Johnson, that the victim "flipped out on him." He told a longtime friend, Robert Surdam, that the victim "had gotten uppity and was getting in his face, saying, you know, 'You don't know me. Who the hell are you?' " He told Katelyn Ouellette, his then girl friend, that the victim approached and asked him for money. He told the police that he said "[H]i," and the victim variously said, "Don't say hi to me," "Don't fucking talk to me," or was mumbling.[1] In the defendant's accounts, the victim then either hit or attempted to hit him; the defendant punched the victim in the face, and after the victim fell to the ground, the defendant and Silva both kicked the victim multiple times. At one point, the defendant and Silva were kicking the victim at the same time. The defendant told Johnson that he beat up the victim "pretty badly," and told Surdam that he and Silva had beaten the victim "worse than they meant to." According to the defendant, at some point he stopped kicking the victim and started to walk away, while Silva continued kicking, and then the defendant stopped Silva's attack as well. Silva removed a backpack, a wallet, and a lighter from the victim, elbowing the victim when he tried to get up during the search. The defendant told the police that he had said to Silva that Silva should not have taken money from the victim, and that the defendant did not accept any of the money. However, testimony from Ouellette indicated that the defendant accepted about seventy dollars and the lighter taken from the victim. The defendant also initially told police that he did not participate in the kicking, but admitted that he had kicked the victim when officers noticed blood on his sneakers. On the evening of the incident, Ouellette observed blood on the defendant's leg, on his stomach, and on his ear. Bloodstains on the defendant's sneakers and shirt, and on Silva's sneakers, matched the deoxyribonucleic acid profile of the victim.

---

[1]The defendant was interrogated by two State police officers and a Wareham detective at the Wareham police department in the early morning hours of June 11, 2004, approximately thirty-six hours after the attack. He was not handcuffed and he was not intoxicated. He received Miranda warnings in oral and written form, and agreed orally and in writing to waive his rights and speak with the officers. The interview was not electronically recorded. During the interview, the defendant described the encounter with the victim four separate times.

After the attack, the defendant and Silva encountered Kathy Lewis Brown, who was walking in the area, and had a brief, innocuous conversation with her, asking whether she knew Silva's grandmother. Brown did not describe any animosity between the defendant and Silva, but did testify that the defendant seemed a little bit agitated and angry, while Silva seemed calm and relaxed.

Although a pool of blood was found on the path, the victim's body was found some thirty feet away and off the path. The position of the victim's body, the state of his clothing, and the leaves near his body were consistent with a finding that the body had been moved. An autopsy showed that the victim died of blunt trauma to the chest, which broke his sternum and lacerated his heart. The injury was caused by force greater than a punch, probably by stomping while the victim was lying on a flat surface. The victim also had abrasions on his chest, arms, legs, and head; a broken jaw, probably caused by a blow to the bottom of the chin; and a lacerated lung caused by broken ribs. His face appeared badly beaten. He likely lived for a few minutes after the fatal injury.

*Discussion.* 1. *Evidence of prior conduct.* At trial, the defendant's theory was that Silva, rather than he, inflicted the fatal injuries by stomping on the victim's chest, and that the defendant attempted to dissuade Silva from continuing the attack. To that end, the defendant sought to introduce testimony by Surdam that some months before this incident, Silva had attempted to attack someone with a knife, and the defendant had prevented the attack.[2] The judge granted the Commonwealth's motion in limine to exclude the evidence. The defendant argues that the prior incident was admissible as third-party culprit evidence.

In general, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Mass. G. Evid. § 404(b) (2008-2009). It is true that "[a] defendant may introduce evidence that tends to show that another person committed the crime or had

---

[2]According to the Commonwealth's motion in limine, Robert Surdam told police investigators that he believed the defendant's account of events in this case because "a couple of months ago at the defendant's house he saw Robert Silva 'go after someone with a knife' and the defendant stopped him."

the motive, intent, and opportunity to commit it." *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 800 (2009), quoting *Commonwealth* v. *Lawrence*, 404 Mass. 378, 387 (1989). However, if the defendant seeks to admit prior bad acts of the other person as part of that defense, "the defendant must show that 'the acts of the other person are so closely connected in point of time and method of operation as to cast doubt upon the identification of [the] defendant as the person who committed the crime.' " *Commonwealth* v. *Conkey*, 443 Mass. 60, 66 (2004), quoting *Commonwealth* v. *Hunter*, 426 Mass. 715, 716-717 (1998). See *Commonwealth* v. *Scott*, 408 Mass. 811, 816 (1990), quoting *Commonwealth* v. *Brown*, 27 Mass. App. Ct. 72, 76 (1989) ("Apart from considerations of proximity in time and location, the instant and the similar crime must share singular features or present striking resemblances of method").

The evidence offered by the defendant was a prior act, offered to prove the respective characters of Silva and the defendant in order to show action in conformity therewith; it was therefore inadmissible. See Mass. G. Evid. § 404(b), *supra.* The rule admitting prior bad acts of third-party culprits does not have any application to this case. The Commonwealth did not claim that Silva, the alleged third-party culprit, was *not* a full participant in the crime; rather, it claimed that the defendant was *also* a participant. Even if the rule did apply to this case, the alleged prior crime would not meet the standard for prior bad acts of a third-party culprit. Silva's alleged prior and present assaults share no singular features or striking resemblance: the prior assault was committed with a knife, rather than a shod foot; it was committed in the defendant's house, rather than a path in the woods; and it was inferrably committed against an acquaintance of the defendant's, rather than a stranger.[3]

2. *Unrecorded statements.* The investigating officers did not record their interrogation of the defendant. The judge gave an appropriate instruction regarding unrecorded statements, as

---

[3]We note that the judge's refusal to permit the proffered evidence about Silva's prior assault in no sense deprived the defendant of his ability to present his theory that Silva committed the murder alone; his descriptions of the crime as committed by Silva came in both through Surdam's testimony and through his statement to the police.

required by *Commonwealth* v. *DiGiambattista,* 442 Mass. 423, 447-448 (2004). The defendant requests that we now hold that unrecorded statements to police are per se inadmissible, a step we declined to take in *Commonwealth* v. *DiGiambattista, supra* at 449. We again decline to do so.

3. *Sufficiency of the evidence.* The defendant argues that the judge improperly denied his motion for a required finding of not guilty, because there was insufficient evidence that he had the requisite state of mind for murder in the first degree or armed robbery under either a principal or a joint venture theory of liability. The judge committed no error.

"[A] motion for a directed verdict should be denied 'if all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt.' " *Commonwealth* v. *Latimore,* 378 Mass. 671, 676 (1979), quoting *Commonwealth* v. *Cooper,* 264 Mass. 368, 373 (1928). The required mental state for murder in the first degree on the theory of extreme atrocity or cruelty is malice, "defined as an intent to cause death, to cause grievous bodily harm, or to do an act which, in the circumstances known to the defendant, a reasonable person would have known created a plain and strong likelihood that death would follow." *Commonwealth* v. *Novo,* 449 Mass. 84, 99 (2007). The required mental state for armed robbery is intent to steal. See *Commonwealth* v. *Rivera,* 445 Mass. 119, 130 & n.15 (2005).

Viewed in the light most favorable to the Commonwealth, there was evidence in this case from which the jury could infer that: the defendant attacked the victim before Silva did; the defendant punched the victim hard enough to break his jaw; the defendant kicked the victim multiple times, getting blood on his sneakers, shirt, and ear; the defendant and Silva were kicking the victim at the same time; the defendant, by his own admission, hurt the victim "pretty bad," "worse than they meant to"; the defendant stood by while Silva searched the victim and took his money and property, and Silva hit the victim again to subdue him during the search; the defendant and Silva did not appear to be quarreling as they left the area of the attack; and the defendant and Silva divided the victim's money and property. This evidence supports a finding that the defendant had the requisite

Commonwealth *v.* Pimental.

intent for both murder and armed robbery, either as principal or joint venturer. See *Commonwealth* v. *Johnson*, 425 Mass. 609, 611 n.3 (1997) (where death caused by "stab wounds with blunt trauma injury," defendant who kicked but did not stab could be guilty as both principal and joint venturer); *Commonwealth* v. *Pucillo*, 427 Mass. 108, 112 (1998) (shared intent of malice aforethought where defendant hit victim in chest and on jaw, and kicked him during next thirty minutes); *Commonwealth* v. *Semedo*, 422 Mass. 716, 720 (1996) (shared murderous intent existed where defendant 'participated . . . in a brutal battery' and 'battered the victim's head and body' with his shod foot); *Commonwealth* v. *Sinnott*, 399 Mass. 863, 873 (1987) (jury might properly infer shared intent necessary to convict defendant of murder by joint venture from infliction of repeated blows and kicks to victim's head, shoulders, and groin). See also *Commonwealth* v. *Allison*, 434 Mass. 670, 674, 677 (2001) (sufficient evidence of joint venture armed robbery and intent to steal where defendant participated in assault and later possessed victim's money).

4. *Assault and battery by means of a dangerous weapon.* Based on the evidence presented at trial, the judge instructed the jury on the two charged crimes, murder[4] and armed robbery, and on the lesser included offenses of voluntary manslaughter (reasonable provocation and excessive use of force in self-defense) and involuntary manslaughter (assault and battery resulting in unlawful killing). She declined to give an instruction on assault and battery by means of a dangerous weapon as a lesser included offense of murder. The defendant argues that he was entitled to the requested instruction as a lesser included offense of murder, and that the judge's refusal was error, because the jury could have found that the defendant kicked the victim in a nonfatal manner, but did not stomp on him or share an intent that Silva stomp on him. The defendant's argument fails because assault and battery by means of a dangerous weapon is not a lesser included offense of murder.

"A defendant may properly be convicted of one crime, 'though

---

[4]The judge included instructions on the three theories of murder in the first degree — deliberate premeditation, extreme atrocity or cruelty, and felony-murder — and on murder in the second degree; the judge did not charge on felony-murder in the second degree.

not expressly charged with that precise crime, if it is a lesser included offense of the crime' charged." *Commonwealth* v. *Walker*, 426 Mass. 301, 303 (1997), quoting *Commonwealth* v. *Schuchardt*, 408 Mass. 347, 351 (1990). "[L]esser included offenses are those necessarily included in the offense as charged." *Commonwealth* v. *Walker, supra*, quoting *Ariel A.* v. *Commonwealth*, 420 Mass. 281, 285 (1995). "The test is whether, '[i]n order to convict [of the greater offense], all the elements of [the lesser offense] must be found, plus an additional aggravating factor.' " *Commonwealth* v. *Schuchardt, supra*, quoting *Commonwealth* v. *Sherry*, 386 Mass. 682, 695 (1982). Cf. *Commonwealth* v. *Vick, ante* 418, 430-433 (2009) (affirming convictions of both assault and battery by means of dangerous weapon causing serious bodily injury and armed assault with intent to murder, arising from single act, where each crime required proof of element other did not).

Assault and battery by means of a dangerous weapon fails the test to be a lesser included offense of murder. A conviction of murder does not require proof of all of the elements of assault and battery by means of a dangerous weapon, which has as an element that an actual battery be accomplished by means of a dangerous weapon. *Commonwealth* v. *Appleby*, 380 Mass. 296, 306 (1980). See *Commonwealth* v. *Puleio*, 394 Mass. 101, 107-108 (1985) (elements of murder).[5,6]

5. *Prosecutor's statements.* The defendant argues that the prosecutor made four statements during her closing argument that were not supported by the evidence. Because the defendant did not object at trial, we review the challenged statements for any substantial likelihood of miscarriage of justice. *Commonwealth* v. *Francis*, 450 Mass. 132, 140 (2007).

---

[5]In *Commonwealth* v. *Charles*, 47 Mass. App. Ct. 191, 194-195 (1999), the Appeals Court held that assault and battery by means of a dangerous weapon may sometimes be a lesser included offense of murder. We disagree. Unlike assault and battery — which *is* a lesser included offense of murder, see *Commonwealth* v. *Myers*, 356 Mass. 343, 350 & n.1 (1969) — assault and battery by means of a dangerous weapon requires proof of an element that murder does not.

[6]Although the defendant does not raise the point, we note that assault and battery by means of a dangerous weapon is also not a lesser included offense of armed robbery, the other crime of which the defendant was convicted. See *Commonwealth* v. *Wolinski*, 431 Mass. 228, 238-239 (2000).

"[P]rosecutors are entitled to marshal the evidence and suggest inferences that the jury may draw from it." *Commonwealth v. Drayton*, 386 Mass. 39, 52 (1982). A prosecutor may not "misstate the evidence or refer to facts not in evidence," *Commonwealth v. Kozec*, 399 Mass. 514, 516 (1987), and may not assert a "personal opinion as to the credibility of a witness or the guilt of an accused." *Commonwealth v. Chavis*, 415 Mass. 703, 713 (1993). However, "[a] certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed." *Commonwealth v. Kozec, supra* at 517.

In the first challenged statement, the prosecutor argued that the jury could infer, in light of the defendant's lack of a job or money, that the defendant "saw an opportunity [for robbery] when he saw [the victim] in the woods, a man who was much smaller, who was drunk, who was defenseless." The defendant argues that the prosecutor's statement was impermissibly speculative, where the only testimony describing the confrontation — the defendant's own statements — indicated that the victim was the first aggressor. We disagree. The prosecutor's argument is not at all inconsistent with the defendant's characterization of the victim as the person who swung first. Moreover, the prosecutor was free to argue a version of the confrontation other than that offered by the defendant. See *Commonwealth v. Guy*, 441 Mass. 96, 103 n.7 (2004) ("The jury, as the finders of fact, were free to reject the defendant's version of events in its entirety"). The prosecutor's proposed inference was reasonable. See *Commonwealth v. Dubois*, 451 Mass. 20, 26 (2008), quoting *Commonwealth v. Merola*, 405 Mass. 529, 533 (1989) ("inferences 'need only be reasonable and possible[, not] necessary or inescapable' "). The second challenged statement, in which the prosecutor argued that the defendant's claim that the victim demanded money from Silva and the defendant was "absolutely ludicrous," is permissible for the same reasons.

The third challenged statement is that the defendant told a witness that "he and [Silva] were walking through the woods and [the victim] came up to him and said, 'You don't belong here. Get out.' " The prosecutor contrasted that statement with the defendant's statement to Ouellette, that the victim had approached and demanded money. The defendant is correct that the

prosecutor's characterization was slightly inaccurate: the defendant told other witnesses variously that the victim "flipped out," or that the victim said, "You don't know me" or "Don't say hi to me," but not, "You don't belong here." However, to the extent that the prosecutor's minor misstatement was improper, her point — that the defendant did not tell anyone other than Ouellette that the victim demanded money — remains valid, and we perceive no likelihood of miscarriage of justice.

Finally, the defendant challenges the prosecutor's statement, "We also heard from Mr. Surdam, who the defendant also made admissions to about beating and robbing [the victim]." The defendant argues that Surdam did not testify to any admissions regarding robbery. The defendant's characterization of Surdam's testimony is essentially correct; Surdam testified that Silva, rather than the defendant, committed the robbery. However, the thrust of the prosecutor's argument as to Surdam's testimony was, first, that the defendant had kicked the victim at least six times, and second, that Surdam had fabricated his claim that the defendant attempted to dissuade Silva from further violence. The prosecutor's stray reference to admissions about robbery received no further emphasis, and in context, we do not perceive a substantial likelihood of miscarriage of justice.

6. *Jury discretion as to degree of murder.* At the end of her instruction on felony-murder in the first degree, the judge instructed the jury:

> "The law requires me to tell you that if the evidence allows you to find the defendant guilty of murder in the first degree, you may return a verdict of guilty of murder in the second degree. *You have an obligation to return a verdict of the highest degree of murder that the Commonwealth has proved beyond a reasonable doubt"* (emphasis added).

The defendant argues that the murder statute, G. L. c. 265, § 1, which states that "[t]he degree of murder shall be found by the jury," grants the jury full discretion to find a degree of murder lower than that proved by the Commonwealth; and that the judge committed error by informing the jury of their obligation to find the defendant guilty of the highest degree of murder proved beyond a reasonable doubt. G. L. c. 265, § 1. As the

defendant acknowledges, our cases have rejected this construction of G. L. c. 265, § 1. *Commonwealth* v. *Noeun Sok,* 439 Mass. 428, 439-440 (2003). See *Commonwealth* v. *Paulding,* 438 Mass. 1, 9 (2002). See also *Commonwealth* v. *Kirwan,* 448 Mass. 304, 318-319 (2007). The italicized portion of the judge's instruction was correct.

7. *Review under G. L. c. 278, § 33E.* We have examined the record pursuant to our duty under G. L. c. 278, § 33E, and discern no basis on which to grant the defendant relief.[7]

*Judgments affirmed.*

---

[7]The judge permitted the Commonwealth to introduce several color photographs of the victim's body as altered by the autopsy; the photographs portray the victim's muscles and internal organs, with very little visual context. The defendant does not contest the admission of the photographs on appeal, and we do not discern a substantial likelihood of miscarriage of justice. See *Commonwealth* v. *Clemente,* 452 Mass. 295, 335 (2008), cert. denied, 129 S. Ct. 132 (2009). The judge has "considerable discretion" in admitting photographs, and "it is well settled that where a defendant 'is accused of committing murder with extreme atrocity or cruelty and with premeditation and deliberation, that photographs indicating the force applied and portraying the injuries inflicted may properly be admitted on the issue of whether the murder was committed with extreme atrocity or cruelty, as well as on the issue of premeditation and deliberation.' " *Commonwealth* v. *Olsen,* 452 Mass. 284, 293-294 (2008), quoting *Commonwealth* v. *Berry,* 420 Mass. 95, 108 (1995). Nevertheless, we repeat and stress a caution that we have previously given, which is that photographs showing the body as altered during autopsy can be inflammatory and prejudicial, and "should be admitted only if relevant to the resolution of a contested issue." *Commonwealth* v. *Lyons,* 444 Mass. 289, 298 (2005). See *Commonwealth* v. *Carlino,* 429 Mass. 692, 696 & n.2 (1999) (directing that autopsy photographs of internal organs [including heart and liver] be excluded from evidence on retrial, even though relevant to extreme atrocity or cruelty, where extent of internal injuries sufficiently shown by other evidence).