# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* SALVATORE J. TRIPOLONE. No. 01-P-603. January 7, 2003. *Practice, Criminal,* Instructions to jury, Witness. *Evidence,* Failure to produce witness. *Witness,* Unavailability.

In *Commonwealth* v. *Schatvet,* 23 Mass. App. Ct. 130, 134-135 (1986), we explicated the circumstances in which it is appropriate for a trial judge to give to a jury a missing witness instruction, i.e., to instruct the jury that if a party, without explanation, does not call a witness who is available to it and is likely to be friendly to it, the jurors may infer the testimony of that witness would have been unfavorable to the party that might have been expected to call the "missing witness." There is no basis for such an inference, however, if the testimony of the witness not called would be unimportant, as would be the case if the testimony of the witness were just corroborative or cumulative. *Id.* at 134. *Commonwealth* v. *Spencer,* 49 Mass. App. Ct. 383, 386-391 (2000). Indeed, the missing witness instruction should be given "only in clear cases, and with caution." *Commonwealth* v. *Schatvet, supra.* See *Commonwealth* v. *Figueroa,* 413 Mass. 193, 199 (1992), *S.C.,* 422 Mass. 72 (1996); *Commonwealth* v. *Alves,* 50 Mass. App. Ct. 796, 802 (2001). Whether to give a missing witness instruction or to permit a lawyer to make a missing witness argument lies within the discretion of the trial judge, and an appellate court will not reverse unless it decides the exercise of discretion was manifestly unreasonable. *Commonwealth* v. *Thomas,* 429 Mass. 146, 151 (1999). *Commonwealth* v. *Ivy,* 55 Mass. App. Ct. 851, 860 (2002). The degree of discretion may be less when it is the defendant who asks for a missing witness instruction or to make a missing witness argument. *Commonwealth* v. *Smith,* 49 Mass. App. Ct. 827, 831-832 (2000).

Against this backdrop of decisional law, we conclude that the trial judge in the instant case acted within his discretion in declining a defense request for a missing witness instruction and in declining to grant counsel permission, in closing argument, to ask the jury to draw an adverse inference against the Commonwealth because it had not produced a particular witness.

The defendant, Salvatore Tripolone, stood trial on charges of rape, violation of a domestic abuse order entered pursuant to G. L. c. 209A, and armed assault in a dwelling house (G. L. c. 265, § 18A). The judge directed a required finding of not guilty on the last indictment and the jury returned verdicts of guilty as to rape and the c. 209A violation.

These, in summary, were the facts the jury could find, viewing the evidence in a light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-677 (1979). The defendant, who had lived with the victim at an earlier time, made an unexpected visit to the victim's

house at 7 A.M. on November 5, 1993, ostensibly to collect an electric fan. The victim wore night clothes consisting of a thermal T-shirt and sweatpants. Once inside the victim's dwelling, the defendant said that he had, in fact, come to kill her and he produced a knife in earnest of that intent. The victim dissuaded the defendant from that purpose. His objective changed to having sexual intercourse with her. The victim said "no" but the defendant repeated his desire and the knife was still out. Sexual congress occurred against the victim's free will. She complained of rape, first to a friend and, later that day, to the Raynham police.

What follows concerns the police investigation, about which memories of witnesses at trial were imprecise, and as to which the paper record was ragged. We set out the details because they are at the center of the defendant's missing witness argument. On November 8, 1993, approximately seventy-two hours after the assault complained of, a three-man team of Raynham police officers visited the victim's mobile home. That team included Detective David Chaves, Officer Robert Midgley, and Captain Louis Pacheco, the ranking officer. At some point, they were joined by a fourth officer, Brian Carr. Their purpose was to videotape the victim's living quarters and to assemble physical evidence. The police picked up a bedspread; they may or may not, according to Captain Pacheco, have picked up a pair of sweatpants, a thermal top, and white panties. In any event, the evidence list was lost and the videotape was lost. Testimony was equivocal as to who had charge of the videotape and who had charge of the evidence. Captain Pacheco thought it was Detective Chaves; Officer Midgley thought it was Captain Pacheco. After she had reported the rape, the victim was told by the Raynham police to go to Cape Cod Hospital in Hyannis (town of Barnstable) for examination. Besides interviews by medical personnel, she was also questioned by Officer John Corbett, from the Barnstable police, who retrieved a rape kit from the hospital and a pair of sweatpants that the victim had put on after the reported sex act. Those were offered as evidence by the prosecution and admitted as an exhibit. Brian Carr was the evidence officer of the Raynham police department. He spoke to having retrieved from the State crime laboratory a box of evidence that included a pair of panties, plus a couple of pairs of other panties, gray sweatpants, a rape kit, a sheet cover (bedspread), and a dog biscuit.[1] All in all, there was fog around who picked up what evidence and when the victim wore the items of clothing.

Detective Chaves was not produced by the Commonwealth as a witness. He had left the Raynham police force to become an agent of the Federal Bureau of Investigation and, so far as known, was "working terrorism in New York." The core of the defense contention on appeal is that Chaves might have cleared up who did what at the victim's apartment when the three-man squad of police visited it as a crime scene. It is not, on the record, in the least apparent why Chaves, seven years later,[2] would remember more precisely than Captain Pacheco and Officer Midgley which officer did what on November 8, 1993, who made the videotape and who picked up what clothing. It is still less convincing that were Chaves to tell a third version that this would have shored up the defendant's case. The defense had already established that

---

[1]The victim kept a dog and the dog biscuit apparently was on the bedspread when the police rolled it up and took it away.

[2]The trial was held in October, 2000.

participants in the investigation had varying memories about how it had been conducted, allowing defense counsel to make what hay he could about that. The judge was right in deciding that Chaves, who was not easily available as a witness, was likely to be a very peripheral one. So far from being a clear case for a missing witness instruction, an instruction along those lines was likely to lead the jury to speculation. The trial judge was right to decline the request for a missing witness instruction. For the same reasons, the trial judge similarly exercised his sound discretion in denying permission to defense counsel to make a missing witness argument based on the Commonwealth not having called Chaves.

*Judgments affirmed.*

*Rocky Pilgrim* (*Kevin Connelly*, Assistant District Attorney, with her) for the Commonwealth.

*John M. Brinkman* for the defendant.