COMMONWEALTH *vs.* NIELS N., a juvenile.

No. 07-P-476.

Hampden. February 12, 2008. - February 23, 2009.

Present: RAPOZA, C.J., PERRETTA, DREBEN, CYPHER, & WOLOHOJIAN, JJ.

*Delinquent Child. Assault with Intent to Rape. Indecent Assault and Battery. Assault and Battery. Practice, Criminal,* Duplicative convictions, Instructions to jury. *Evidence,* First complaint, Tape recording, Videotape, Prior inconsistent statement, Medical record.

Adjudication of the juvenile as delinquent by reason of assault and battery was duplicative of his adjudication of delinquency by reason of indecent assault and battery on a child under the age of fourteen, and created a substantial risk of a miscarriage of justice requiring that the adjudication of delinquency by reason of assault and battery be vacated, where, due to the trial judge's erroneous jury instructions that omitted the element of nonconsent on the assault and battery charge, the assault and battery charge was submitted to the jury as a lesser included offense of indecent assault and battery on a child, and became the law of the case, and where the jury were not instructed that the offenses were required to rest on separate and distinct acts [693-696]; moreover, the charge of indecent assault and battery on a child was duplicative of the offense of assault with intent to rape a child, and created a substantial risk of a miscarriage of justice requiring that the adjudication of delinquency by reason of indecent assault and battery on a child be vacated, where the juvenile's actions were so closely related as to constitute a single crime, and the jury were not instructed that the convictions needed to rest on separate and distinct acts [696-699]. CYPHER, J., dissenting in part, with whom RAPOZA, C.J., joined.

At the trial of indictments charging the juvenile with rape and assault with intent to rape a child under the age of sixteen, as well as a delinquency complaint charging indecent assault and battery on a child under the age of fourteen, the nonverbal conduct of the juvenile's stepbrother [699-701], the victim's mother [701], and a nurse who examined the victim [702] did not qualify as statements under principles of evidence, and therefore their admission in evidence did not violate the "first complaint" rule.

At the trial of a delinquency complaint and two indictments, principles of due process did not require that the Commonwealth videotape an interview of the victim. [702]

The judge at the trial of a delinquency complaint and two indictments did not abuse his discretion in excluding portions of the victim's medical record, where the victim never testified concerning any of the matters contained in the excluded portions of the medical records. [702-703]

The judge at the trial of a juvenile delinquency complaint and two indictments
    did not err in refusing to give a "missing witness" instruction to the jury
    regarding the Commonwealth's decision not to call as witnesses any police
    officers who had been involved in the investigation of the case, where
    there was no basis upon which it could be inferred that the testimony of
    the absent officers would have been unfavorable to the Commonwealth,
    the juvenile did not claim that the witnesses were not equally available to
    him to call at trial, and the juvenile did not provide any explanation as to
    why he chose not to call them himself. [703]

COMPLAINT received and sworn to in the Hampden County
Division of the Juvenile Court Department on February 28,
2005.

INDICTMENTS found and returned in the Superior Court Depart-
ment on April 6, 2005.

The cases were tried in the Hampden County Division of the
Juvenile Court Department before *James G. Collins*, J.

*Robert Herrick* for the juvenile.

*Dianne M. Dillon*, Assistant District Attorney, for the Com-
monwealth.

WOLOHOJIAN, J. After a jury trial on a delinquency complaint
and two indictments charging the juvenile as a youthful offen-
der, the juvenile was adjudicated a delinquent child. The juvenile
was found guilty on an indictment charging assault with intent
to rape a child under age sixteen in violation of G. L. c. 265,
§ 24B[1]; on an indictment charging rape of a child with force,
the juvenile was found guilty of the lesser included offense of
assault and battery in violation of G. L. c. 265, § 13A. Lastly,
the juvenile was found delinquent on a complaint charging in-
decent assault and battery on a child under age fourteen in
violation of G. L. c. 265, § 13B.

On appeal, the juvenile claims that the adjudications were
duplicative because (a) assault and battery was a lesser included
offense of indecent assault and battery on a child, and (b) the
acts underlying the charges of indecent assault and battery on a
child and assault with intent to rape a child were so closely

---

[1]Because the jury found that the offense did not involve infliction or threat
of serious bodily harm, the juvenile was not convicted as a youthful offender
but, rather, was adjudicated a delinquent child. See G. L. c. 119, § 52.

related in fact as to constitute a single crime.[2,3] We agree that the adjudications are duplicative, and as a result set aside the assault and battery and indecent assault and battery adjudications. We affirm the juvenile's adjudication of delinquency by reason of assault with intent to rape a child under age sixteen.

*Background.* Viewing the evidence in the light most favorable to the Commonwealth, the jury could have found the following facts. On January 18, 2005, the juvenile, then age sixteen, sexually assaulted his seven year old half sister, Norma.[4] Norma, who had gone to the juvenile's bedroom to look for her doll, was pushed by the juvenile so that her knees were on the floor and her face on the bed. He pulled down her pants as well as his own,[5] and then climbed atop her and began "humping her"

---

[2]Because the juvenile raises these issues for the first time on appeal, we review for whether the alleged errors created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Drew*, 67 Mass. App. Ct. 261, 264 (2006).

[3]The juvenile also raises several other issues on appeal, concerning first complaint testimony, failure to videotape an interview with the victim, prior inconsistent statements, and failure to give the jury a "missing witness" instruction.

[4]We use pseudonyms to refer to all family members.

[5]The sequence of pushing Norma onto the bed and pulling down her pants is not entirely clear in the record. Norma's testimony was as follows:

Q.: "What happened after you went into [the juvenile's] room and you found your doll?"

A.: "He pushed me on the bed."

. . .

Q.: "Okay. And what happened after he pushed you on the bed?"

A.: "Then he got on top of me."

Q.: "Okay. And what about your, your clothes?"

A.: "My pants were down a little bit."

Q.: "Okay. Now did you pull your pants down?"

A.: "No he did."

Q.: "Okay. When he pushed you onto the bed did he say anything to you?"

A.: "No."

Q.: "Okay. And after, after he pulled down your pants what did he do?"

from behind. The juvenile's eleven year old stepbrother, Kevin, arrived by coincidence while the incident was occurring and saw — through a crack between the locked bedroom door and the jamb — Norma face down on the bed and the juvenile on top of her with his pants down.

A.: (No verbal response.)

Q.: "Well what did he do with his pants, do you remember?"

A.: "He, he pulled them down."

Q.: "And then what happened? Where were you now, where were you on the bed?"

A.: "I was on my knees on the ground and my face was facing down on the bed but I was towards like the closet."

Q.: "Okay. So your face was on the bed but your knees were on the ground?"

A.: "Yes."

Q.: "Okay. And was he behind you or where was he?"

A.: "He was behind me."

Q.: "Okay. And what, what happened next?"

A.: (No verbal response.)

   . . .

Q.: "When, when you said your face was on the bed did you say anything to him?"

A.: "No."

Q.: "Okay. And he didn't say anything to you?"

A.: "No."

Q.: "Okay. And after, right after you were on your knees and you said he was behind you, then what did he do when he was behind you?"

A.: "He got on top of me."

Q.: "Okay. And do you remember, you said he got on top of you, where was his head, do you remember?"

A.: "No."

Q.: "Okay. And after he got on top of you did he say anything?"

A.: "No."

Q.: "Okay. Did you say anything?"

A.: "No."

Additional facts are set out in the sections of the discussion, *infra*, to which they pertain.

*Discussion.* 1. *Duplicative convictions.*[6] The case rested on only three acts, all closely related in time, place, and intent. The Commonwealth presented no theory as to how these three acts related to the charged offenses, or to the elements of any of the crimes. Because of this, and the absence of a unanimity instruction,[7] we do not and cannot know on which act or acts the jury predicated the convictions.

On appeal, the Commonwealth contends that the removal of Norma's pants constituted indecent assault and battery, pushing her onto the bed constituted a separate assault and battery, and getting on top of her supported the separate crime of assault with intent to rape. Neither this theory nor any other was advanced during the trial, either to the judge or to the jury. The prosecutor at no point articulated the Commonwealth's position as to which of the three acts (singly or in combination) satisfied which of the charges, the lesser included offenses that were also submitted to the jury for consideration,[8] or the elements of either. In both its opening statement and its closing argument, the Commonwealth said merely that the case was not complicated and that the conduct consisted of: "[Norma] went down to the Defendant's room, he pushed her onto the bed, he pulled down his pants, he pulled down her pants and he got on top of her."

Nor did the jury receive guidance from any other source as to how they were to view the evidence in relation to the charges. The indictments and the delinquency complaint consisted only of a recitation of the elements of each applicable crime and the date on which the offense was charged to have occurred; they did not identify the Commonwealth's theory as to how the juvenile com-

---

[6]We recognize that a "juvenile adjudication is not considered to be [a] criminal conviction," *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 804 (2007), citing *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 786 (1981), but herein employ the terms "conviction(s)" and "adjudication(s)" interchangeably for ease of reference.

[7]A unanimity instruction was not requested below; nor was its absence objected to.

[8]As indicated earlier, the jury were given the option of convicting the juvenile of assault and battery as a lesser included offense of rape of a child. The verdict slip on assault with intent to rape a child also provided the alternative of convicting on the lesser included offense of simple assault.

mitted each crime. The jury instructions, too, were silent, containing no reference to any of the evidence in the case, or to how the evidence related to any of the offenses or their elements.

In short, the jury received no guidance — whether from the charges, the Commonwealth's case, or the trial judge — as to what conduct could form the predicate for which offense(s) and which offenses needed to be predicated on separate and distinct acts. Contrast *Commonwealth* v. *King*, 445 Mass. 217, 225-226 (2005), cert. denied, 546 U.S. 1216 (2006) (convictions of indecent assault and battery and rape were not duplicative where the judge instructed the jury that separate and distinct acts were needed and explained the Commonwealth's theory as to which acts constituted which offenses). In these circumstances, it is impossible to know which of the three acts, singly or in combination, was relied upon by the jury in finding the juvenile guilty of any of the charges.

a. *Assault and battery and indecent assault and battery on a child.* The juvenile argues that his adjudications of delinquency by reason of assault and battery and indecent assault and battery on a child are duplicative because assault and battery is a lesser included offense.

The juvenile was convicted of indecent assault and battery of a child under the age of fourteen, G. L. c. 265, § 13B, which, unlike simple assault and battery, does not require proof of lack of consent. See *Commonwealth* v. *Farrell*, 31 Mass. App. Ct. 267, 268 (1991) ("[b]y St. 1986, c. 187, the Legislature amended § 13B to exclude lack of consent as an element of the crime of indecent assault and battery on a child under fourteen"). Therefore, under a proper jury charge, "a simple assault and battery . . . is not a lesser included offense within the statutory offense of indecent assault and battery of a child." *Id.* at 268-269.

In the case at bar, however, the judge did not instruct the jury that lack of consent was required to prove assault and battery, even though such an instruction was required. See, e.g., *Commonwealth* v. *Cohen*, 55 Mass. App. Ct. 358, 359 (2002) (assault and battery requires proof of lack of consent where the touching is offensive). Moreover, the judge (in charging the elements of rape) instructed the jury, "[A]nd of course the law, for a child of seven years old, they're not old enough to give consent

so consent is not a factor."[9] As part of the instructions concerning indecent assault and battery on a child, the judge similarly (correctly) informed the jury: "Because of the age of the alleged victim you are not to consider, as I mentioned earlier, whether or not, in this case the alleged victim, she consented to any touching. If the victim is under fourteen years of age it is irrelevant whether or not she consented." In short, not only were the jury not instructed that proof of lack of consent was required in order to convict the juvenile of assault and battery on a theory of an offensive touching,[10] the only information they received at all concerning consent was that it was irrelevant. In effect, then — through an erroneous jury charge that omitted the element of nonconsent — the assault and battery in this case became a lesser included offense of indecent assault and battery on a child under age fourteen.[11] "This instruction became the law of the case." *Commonwealth* v. *Pinero*, 49 Mass. App. Ct. 397, 399 (2000), and cases cited.

Because the assault and battery charge was submitted to the jury as a lesser included offense of indecent assault and battery on a child under fourteen, the jury should have been instructed that the offenses were required to rest on separate and distinct acts.[12] This is our well-established rule regarding lesser included offenses. See *Commonwealth* v. *King*, 445 Mass. at 225 (convic-

---

[9]This instruction was incomplete, as proof of nonconsent is required on a theory that the child is compelled to submit by force. See *Commonwealth* v. *Thayer*, 35 Mass. App. Ct. 599, 602 n.7 (1993), *S.C.*, 418 Mass. 130 (1994). However, as the juvenile was acquitted of the rape charge, the error is of no import on appeal.

[10]On a charge of assault and battery, proof of lack of consent is not required where the touching is harmful, i.e., committed with "such violence that bodily harm is likely to result." *Commonwealth* v. *Farrell*, 322 Mass. 606, 620 (1948). However, because the judge instructed the jury on both forms of assault and battery (i.e., a harmful or offensive touching), he was required to further instruct that the jury could not convict on a theory that the touching was offensive unless they found that the Commonwealth had proved lack of consent.

[11]The case was also prosecuted and defended as though consent was not an issue. The Commonwealth did not introduce evidence concerning lack of consent (other than the victim's age) and did not argue the issue in closing. The juvenile — for good reason — did not argue consent as a defense.

[12]Whether the events are "separate and distinct acts or part of a single criminal episode" is a question of fact for the jury to determine. *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509 (1999).

tions of the greater and lesser included offenses must "rest on separate and distinct acts"). See also *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509 (1999) (jury properly instructed that the Commonwealth had the burden to prove that the acts constituting the lesser included offense of assault and battery by means of a dangerous weapon were separate and distinct from those constituting murder). Compare *Commonwealth* v. *Moran*, 439 Mass. 482, 489 (2003) (dismissing a lesser included offense where the judge failed to instruct that the convictions had to be predicated on separate and distinct acts). And the failure to provide such an instruction in this case resulted in a substantial risk of a miscarriage of justice such that the adjudication of delinquency by reason of assault and battery must be vacated. See, e.g., *Commonwealth* v. *Juzba*, 46 Mass. App. Ct. 319, 325 & n.1 (1999) (dismissing an indictment for a lesser included offense, noting that "we need not determine whether there was . . . evidence which would support two distinct acts, since the judge did not instruct the jury that the conviction[s of indecent assault and battery and rape] must be based on separate acts"). See also *Commonwealth* v. *Thomas*, 400 Mass. 676, 681-682 (1987) (vacating judgments on convictions of indecent assault and battery where the judge failed to instruct that the convictions needed to rest on facts separate from those constituting aggravated rape); *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989) (same with respect to convictions of indecent assault and battery and rape of a child); *Commonwealth* v. *Howze*, 58 Mass. App. Ct. 147, 151-152 (2003) (same with respect to convictions of indecent assault and battery on a child and statutory rape).[13]

b. *Indecent assault and battery and assault with intent to rape.* The juvenile argues that, although indecent assault and

---

[13]In *Commonwealth* v. *Howze, supra*, a case involving facts remarkably similar to the case at hand, we addressed a similar lack of instruction. In *Howze*, the defendant climbed on top of the victim and pulled her jeans, skirt, and underwear down to her ankles. The Commonwealth argued that these acts together constituted an indecent assault and battery. It further argued that subsequent penetration (something that was not proved in the case at hand) constituted the predicate for the rape conviction. Even with the much more separate act of penetration present in *Howze*, we determined that the convictions were duplicative and that the lesser included offense was to be vacated because the jury had not been instructed that the convictions needed to be based on separate and distinct acts. *Id.* at 150-152.

battery on a child is not a lesser included offense of assault with intent to rape a child, the adjudications were duplicative because the factual basis for each was the same.

Our established rule is that, when tried in a single proceeding, a defendant may be convicted of and punished for multiple crimes based on the same act or on a single course of conduct "provided that each [crime] requires proof of an element that the other does not." *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382, 385 (1998). Thus, if a defendant is charged with two offenses and neither is a lesser included offense of the other, "convictions on both are deemed to have been authorized by the Legislature and hence not duplic[ative]." *Id.* at 386, quoting from *Commonwealth* v. *Jones*, 382 Mass. 387, 393 (1981). However, in some limited circumstances, even where a lesser included offense is not involved, convictions may be duplicative if it "can be said with certainty that [the defendant's] actions were 'so closely related in fact as to constitute in substance but a single crime.' " *Commonwealth* v. *Jones*, 441 Mass. 73, 76 (2004), quoting from *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 662-663 (1979). *Commonwealth* v. *Cabrera*, 449 Mass. 825, 828 (2007). See *Commonwealth* v. *Jones*, 382 Mass. at 394 (even where one crime is not a lesser included of another, punishment on both is precluded where, on the facts, "the two offenses are sufficiently closely related").

In order to determine whether a defendant's actions are "so closely related," we are to look at such factors as whether the acts were separate in time, the form of conduct, and the defendant's intent. See, e.g., *Commonwealth* v. *Wolinski*, 431 Mass. 228, 239 (2000) (examining the characteristics of each of the defendant's acts to determine whether they were so closely related as to result in duplicative convictions). Compare *Commonwealth* v. *Cabrera*, 449 Mass. at 828 (defendant's acts were not so related because "they were separated in time and by different forms of conduct. Moreover, he had separate intents").

When we look at those factors here, it is clear that the juvenile's actions were so closely related as to constitute a single crime. The Commonwealth presented no evidence that the three acts in this case were separated in any way, whether temporally,[14] physi-

---

[14] The episode was apparently short, based on the testimony that Norma left

cally, or otherwise. There was no evidence whatsoever of pause, interruption, delay, or discontinuity from one act to the next. Moreover, the Commonwealth introduced no evidence to show or suggest that the juvenile's intent in pulling down the pants or pushing Norma's face onto the bed was anything other than to effectuate his goal of getting on top of her. Indeed, there was no direct or indirect evidence of the juvenile's intent to rape other than his pulling down of Norma's pants — the same act that the Commonwealth now claims supported the indecent assault and battery conviction rather than the conviction of assault with intent to rape. See *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780, 787-788 (2001).[15]

Where offenses are so closely related in fact that they in substance constitute a single crime, the jury are to be instructed that convictions on those offenses must rest on separate and distinct acts. See *Commonwealth* v. *Santos*, 440 Mass. 281, 293-294 (2003) (vacating a conviction of assault by means of a dangerous weapon as duplicative of a conviction of armed robbery, even though one was not a lesser included offense of the other, because no separate and distinct act instruction was given); *Commonwealth* v. *Morin*, 52 Mass. App. Ct. at 786 n.6 (separate and distinct act instruction required on the retrial of offenses that were so closely related as to constitute a single crime). Just as with lesser included offenses, the error occurs not simply because there were multiple convictions resting on facts so related that they constituted a single crime, but because the jury were not instructed that the convictions needed to rest on separate and distinct acts. See *Com-*

---

the juvenile's room three minutes after Kevin left and that Kevin watched through the door for about a minute.

[15]We consider *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780 (2001), dispositive on the question whether the acts were so closely related as to constitute a single crime. *Morin* involved, inter alia, convictions of indecent assault and battery and assault with intent to rape an adult victim. The facts were as follows: the defendant pushed his way into the victim's apartment, knocking her backward with force, and then locked the door behind him. Once inside, the defendant grabbed the victim's arm and refused to release her. As she struggled, the defendant grabbed at the victim's breasts and at the bottom of her shorts. On two occasions, he put his hand up her shorts and it came into contact with her underwear. As the defendant attempted to pull the victim's shorts down, he told her that he wanted to "screw [her] in the ass." *Id.* at 782. On those facts, the court held that the crimes were so closely related in fact as to render the convictions duplicative. *Id.* at 787-788.

monwealth v. *Santos, supra.* Compare *Commonwealth* v. *Moran,* 439 Mass. at 489 (jury should have been instructed that convictions of indecent assault and battery and simple assault and battery needed to be predicated on separate and distinct acts); *Commonwealth* v. *Black,* 50 Mass. App. Ct. 477, 478-479 (2000) (absent proper jury instruction, a conviction of a lesser included offense will be vacated if the record does not indicate there is only an insubstantial possibility of duplicative convictions based on the same act); *Commonwealth* v. *Howze,* 58 Mass. App. Ct. at 151 (failure to give instruction regarding separate and distinct acts resulted in the possibility of jury confusion and convictions resting on the same facts). Where no separate and distinct act instruction is given, and the actions underlying the offenses — here, assault with intent to rape a child and indecent assault and battery on a child — are so closely related in fact as to constitute a single crime, the error creates a substantial risk of a miscarriage of justice requiring that the conviction of the lesser offense be vacated. See *Commonwealth* v. *Black, supra.*

2. *"First complaint" testimony.* The juvenile argues that there was error in permitting multiple witnesses to testify as to actions they took or reactions they had after they had spoken with the victim. The juvenile claims that this evidence amounted to impermissible multiple complaint testimony and should not have been admitted. Because the juvenile did not object at trial, we review to determine whether there was error and, if so, whether the error created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Alphas,* 430 Mass. 8, 13 (1999). Here, there was no error.

A designated "first complaint witness" (generally the person who the victim first told of the assault) "may testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint." *Commonwealth* v. *King,* 445 Mass. at 243. The "first complaint" rule "is not an exception to the rule against hearsay but rather 'an exception to the usual rule that a prior statement . . . that is consistent with the witness's trial testimony may only be admitted on redirect examination.' " *Id.* at 241 n.21, quoting from *Commonwealth* v. *Peters,* 429 Mass. 22, 27 n.6 (1999). Testimony from multiple complaint witnesses is not permitted. *Commonwealth* v. *King, supra* at 242-243.

The nonverbal conduct at issue here does not qualify as a statement under our principles of evidence. Although the definition of a statement is usually discussed in the context of hearsay, we consider the definition equally applicable in the context of first or multiple complaints. "Both Proposed Mass.R.Evid. 801(a) and Fed.R.Evid. 801(a) define a 'statement' as '(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.' " *Commonwealth* v. *Baker*, 20 Mass. App. Ct. 926, 928 n.3 (1985). See *ibid.* (nonverbal conduct by the person amounts to a "statement" if offered for the purpose of an inadmissible extrajudicial statement). "At common law out-of-court conduct, which by intent or inference expresses an assertion, has been regarded as a statement." *Opinion of the Justices*, 412 Mass. 1201, 1209 (1992), citing *Bartlett* v. *Emerson*, 7 Gray 174 (1856). See Reporter's Note to Mass. G. Evid. § 801 (2008-2009).

To determine whether the nonverbal conduct was intended as an assertion, we look to the person's intention as of the time of the conduct. See *Commonwealth* v. *Baker, supra* (failure to identify suspect from a photographic array was intended at the time by the eyewitness as an assertion that he was not one of the culprits). Thus, in order to prevail on his argument, the juvenile must show that at the time of the nonverbal conduct, either the conduct was intended by the person as an assertion about a "complaint" statement by Norma, or such an assertion can be reasonably inferred. Compare *Commonwealth* v. *Ashman*, 430 Mass. 736, 742-743 (2000) (witnesses' testimony that they had telephoned the police after speaking with the victim created possible inference that the "defendant had abused" the victim; the testimony was therefore "no more than the equivalent of repeating statements of the victim"). The juvenile argues that the impermissibly introduced testimony as to the witnesses' nonverbal conduct implied that "Norma alleged a sexual assault and identified the juvenile as the perpetrator." This argument fails for the reasons set out *infra*.[16]

a. *Kevin.* After having observed the assault through the crack

---

[16]Because no impermissible multiple complaint testimony was admitted, the juvenile's due process argument based on the admission of the same testimony also fails.

by the door, Kevin left and, about three minutes later, so did Norma. Kevin then confronted Norma, who denied that the incident had occurred. He concluded, however, that she was lying and he left, crying.[17]

The juvenile contends that the testimony concerning the fact that Kevin was crying after he spoke with Norma and additional testimony that Kevin told the father that he did not want the juvenile to go to jail violates the first complaint rule by implying that Norma told Kevin that the juvenile had assaulted her.[18] No such inference can reasonably be drawn from the record because Kevin's direct — and uncontradicted — testimony at trial was that Norma denied to him that an assault had occurred. Given the testimony that Norma denied the incident to him, Kevin's crying was a reflection of what he had seen, rather than something intended to relay anything Norma had said to him. Compare *Commonwealth* v. *Cordle*, 404 Mass. 733, 743-744 (1989) (police officer's testimony regarding actions taken after speaking to the victim were based not only on that conversation, but also the officer's observations).

b. *Mother.* After she arrived home from work later on the evening of the assault, Norma's mother spoke to her husband, Norma, Kevin, and the juvenile. She did not testify as to the content of any of these conversations. However, she did testify that, after the conversations occurred, she and her husband decided to take the juvenile that evening to stay at his grandmother's house. The juvenile contends that testimony concerning the decision to send him to his grandmother's house violated the first complaint rule by impliedly revealing what Norma said to her mother before the decision was made. No statement by Norma can be reasonably inferred from the mother's actions because they took place after the mother had spoken to several people, not just to Norma. Compare *Commonwealth* v. *Cordle*, *supra*. Contrast *Commonwealth* v. *Arana*, 453 Mass. 214, 227 n.21 (2009).

---

[17]Norma's father (who is Kevin's stepfather, "the father"), then questioned Kevin about the incident. The father in turn questioned Norma, who confirmed that the incident had occurred. The father was the first complaint witness at trial.

[18]There is no argument to be made regarding the testimony that Kevin stated he did not want the juvenile to go to jail, as this was struck from the record and the jury were instructed to disregard it.

c. *The nurse.* On the morning following the assault, Norma's parents took her to her pediatrician and then to Baystate Medical Center. At trial, the nurse testified that she examined Norma using a sexual assault kit; she also described in detail the various components of the kit and the samples that were taken as part of its administration. Contrary to the juvenile's contention, the nurse's testimony did not violate the first complaint rule, because it was not offered to corroborate Norma's complaint. Rather, the nurse's testimony merely described the steps she took in performing the sexual assault examination, and the test did not conclusively show that an assault had taken place. In these circumstances, the testimony was neither corroborative of any statement by Norma nor prejudicial to the juvenile. We do not understand *Commonwealth* v. *Stuckich*, 450 Mass. 449, 456-457 (2008), to prohibit such testimony. Compare *Commonwealth* v. *Arana*, 453 Mass. at 230-232.

3. *Absence of interview videotape.* The day after the incident, a forensic interviewer conducted a multidisciplinary team (MIT) interview of Norma while a social worker, doctor, Department of Social Services worker, and police officer listened and observed from another room. Although the interview was not transcribed, recorded, or videotaped, several of the participants kept notes, which were produced in discovery to the juvenile. On appeal, the juvenile argues that Federal and State due process principles required the Commonwealth to videotape the MIT interview of Norma, and that it was error to deny his motion to dismiss. We disagree. Although we have acknowledged that the electronic recording of sexual abuse intervention network (SAIN) interviews (comparable to MIT interviews) is "good practice," *Commonwealth* v. *Upton U.*, 59 Mass. App. Ct. 252, 255 (2003), neither we nor the Supreme Judicial Court has "required that such recordings be made." *Commonwealth* v. *Howard*, 446 Mass. 563, 565 n.1 (2006). Moreover, the juvenile has neither argued nor shown any cognizable harm from the absence of a recording.

4. *Inconsistent statements.* The trial judge did not abuse his discretion in excluding portions of the medical record in which the nurse recorded that Norma was unsure whether there had been penetration, whether the juvenile had ejaculated, whether the juvenile had caused her to bleed, or whether he had attacked

her in the presence of others. See *Commonwealth* v. *Sineiro*, 432 Mass. 735, 742 (2000) ("trial judge has considerable discretion in deciding whether inconsistency exists between a witness's testimony at trial and prior . . . statements"). As the trial judge correctly found, the medical records presented no inconsistency because, at trial, Norma never testified concerning any of the matters contained in the excluded portions of the medical records.

5. *Jury instructions.* The juvenile argues that the trial judge erred in refusing to give a "missing witness" instruction to the jury concerning the Commonwealth's decision not to call as witnesses any police officers who had been involved in the investigation of the case.[19] "A missing witness instruction is appropriate when a party 'has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case.' " *Commonwealth* v. *Saletino*, 449 Mass. 657, 667 (2007), quoting from *Commonwealth* v. *Anderson*, 411 Mass. 279, 280 n.1 (1991). The decision to give such an instruction is committed to the discretion of the trial judge and will not be reversed unless manifestly unreasonable. *Commonwealth* v. *Thomas*, 429 Mass. 146, 151 (1999). The juvenile has not shown what testimony of "distinct importance" the officers could have been expected to provide. Consequently, there is no basis upon which it could be inferred that testimony of the absent officers would have been unfavorable to the Commonwealth. See *Commonwealth* v. *Tripolone*, 57 Mass. App. Ct. 901, 901 (2003), quoting from *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986) (jury instructions regarding a party's failure to call a witness "should be given 'only in clear cases, and with caution' "). Moreover, the juvenile does not claim that these witnesses were not equally available to him to call at trial; nor does he provide any explanation as to why he chose not to call them himself. See *Commonwealth* v. *Cobb*, 397 Mass. 105, 108 (1986).

---

[19]The juvenile's one-sentence unsupported argument that the trial judge erred in not giving a jury instruction regarding the prosecution's failure to introduce certain photographs does not rise to the level of appellate argument, and therefore, we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Commonwealth* v. *Cintron*, 435 Mass. 509, 520 n.5 (2001).

*Conclusion.* The adjudications of delinquency by reason of assault and battery and indecent assault and battery on a child are vacated and the corresponding indictment and complaint are dismissed. The adjudication of delinquency by reason of assault with intent to rape a child under age sixteen is affirmed.

*So ordered.*

CYPHER, J. (dissenting in part, with whom Rapoza, C.J., joins). I respectfully dissent from so much of the opinion as concludes that the adjudications of delinquency by reason of indecent assault and battery on a child and assault with intent to rape a child are duplicative.

The juvenile was indicted as a youthful offender for rape of a child with force (G. L. c. 265, § 22A) and assault with intent to rape a child under the age of sixteen (G. L. c. 265, § 24B). He was also charged with delinquency by reason of indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B).

On the indictment charging rape of a child with force, a Juvenile Court jury found the juvenile guilty of assault and battery (G. L. c. 265, § 13A), which was presented to the jury as a lesser included offense. The jury found the juvenile guilty on the indictment charging assault with intent to rape a child under the age of sixteen.[1] The jury also found the juvenile "delinquent" on the complaint charging indecent assault and battery on a child under the age of fourteen. The juvenile was adjudicated delinquent on all three convictions[2] and was "committed to the DYS" (Department of Youth Services).

With respect to the juvenile's delinquency adjudication by reason of assault and battery, the majority concludes that the offense, as described in the jury charge, constituted a lesser included

---

[1]Although the juvenile was charged as a youthful offender, the jury did not find that the offense involved the infliction or threat of serious bodily harm, and he was thus adjudicated a delinquent child. See G. L. c. 119, § 52.

[2]Like the majority, I recognize that a "juvenile adjudication is not considered to be [a] criminal conviction," *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 804 (2007), citing *Department of Youth Servs.* v. *A Juvenile*, 384 Mass. 784, 786 (1981), but, for ease of reference, refer herein to the juvenile's "conviction(s)" or "adjudication(s)."

offense of indecent assault and battery on a child and, therefore, if convictions of both offenses are to be upheld, they must be based on separate and distinct acts. I agree with the majority that because, as charged, the assault and battery was a lesser included offense, and the jury were not provided a separate and distinct act instruction, the adjudication of delinquency by reason of assault and battery must be vacated. See *ante* at 694-696.

However, the same reasoning does not apply to the adjudication of delinquency by reason of indecent assault and battery on a child under the age of fourteen. As the majority acknowledges, indecent assault and battery on a child under the age of fourteen (G. L. c. 265, § 13B) and assault with intent to rape a child under the age of sixteen (G. L. c. 265, § 24B) are not cognate offenses,[3] as each requires proof of an element that the other does not.

1. *Procedural context.* The juvenile argues, for the first time on appeal, that he was deprived of Federal constitutional and State common-law protection against double jeopardy because his delinquency adjudications were duplicative; specifically, that the adjudication of delinquency by reason of indecent assault and battery on a child under the age of fourteen was duplicative of the adjudication by reason of assault with intent to rape a child under the age of sixteen. Thus, according to the juvenile, the complaint on the lesser charge, indecent assault and battery on a child, must be dismissed. The juvenile bases this claim on the argument that the Commonwealth failed to identify separate factual grounds for the crimes, and the judge did not instruct the jury, sua sponte, that they had to find that each crime was supported by separate and distinct acts.

The juvenile did not raise the issue of duplicative convictions at trial. The juvenile also did not request a jury instruction that the verdicts had to be based on separate and distinct acts and did not object to the lack of such an instruction.[4] In the absence

[3]Cognate offenses are those "where one is a lesser included offense of the other." *Commonwealth* v. *Howze*, 58 Mass. App. Ct. 147, 152 (2003).

[4]Whether a conviction is duplicative is a question of law. See *Albernaz* v. *United States*, 450 U.S. 333, 340 (1981). Whether a defendant's actions constitute separate and distinct acts or are part of a single episode is a question of fact for the jury. *Commonwealth* v. *Maldonado*, 429 Mass. 502, 509 (1999).

of an objection, we review to determine whether there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). As this case raises the important issue whether proof of conduct is relevant to double jeopardy analysis (specifically, duplicative convictions), it is necessary to examine both Federal and State double jeopardy principles.

2. *Double jeopardy analysis under the Federal framework.* The Fifth Amendment to the United States Constitution provides that no one shall "be subject for the same offence to be twice put in jeopardy . . . ." The provision is applicable to the States through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969). The United States Supreme Court has interpreted the provision as prohibiting the imposition of multiple punishments for the same offense in a single proceeding. See *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). Compare *Blockburger* v. *United States*, 284 U.S. 299 (1932), with *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871).

The Supreme Court has adopted the *Morey* test to determine what constitutes the same offense. See *Blockburger, supra* at 304, quoting from *Gavieres* v. *United States*, 220 U.S. 338, 342 (1911), quoting from *Morey* v. *Commonwealth*, 108 Mass. at 434:

> "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."

While the language "proof of an additional fact" has been the source of some confusion for courts applying the *Blockburger* test, the Supreme Court has since explained that "[t]he same-elements test, sometimes referred to as the '*Blockburger*' test, inquires whether each offense contains an *element* not contained in the other" (emphasis supplied). *United States* v. *Dixon*, 509 U.S. 688, 696 (1993). In *Dixon*, Justice Scalia, in a plurality opinion, expressly rejected a conduct-based approach for analyzing the meaning of "same offence," criticizing the approach as inconsistent with Supreme Court precedent, "wrong in principle," "unstable in application," "a continuing source of con-

fusion," and "a mistake." *Id.* at 709-711. Compare *Grady* v. *Corbin*, 495 U.S. 508, 526 (1990) (Scalia, J., dissenting) ("[T]he Double Jeopardy Clause . . . guarantees only the right not to be twice put in jeopardy for the same *offense*, and has been interpreted . . . to permit a prosecution based upon the same acts but for a different crime").

Double jeopardy analysis focuses on the *elements* of charged offenses, rather than the *conduct* on which they are predicated, because the Supreme Court conceptualizes the *Blockburger* test as a "rule of statutory construction." *Albernaz* v. *United States*, 450 U.S. 333, 340 (1981). This reasoning is consistent with the proposition that the Legislature's freedom to define crimes and fix punishments is deeply rooted in our jurisprudence. See *Brown* v. *Ohio*, 432 U.S. 161, 165 (1977). The *Blockburger* test is thus a means of discerning legislative intent, or "congressional purpose." *Albernaz* v. *United States, supra.* See *Whalen* v. *United States*, 445 U.S. 684, 693-694 (1980) (explaining that when the Legislature enacts statutes that contain different elements of proof, it may be inferred that the Legislature intended to authorize separate application of each statute). In contrast, when one statute contains all the elements of another, we may infer, absent a "clear indication of contrary . . . intent," that the Legislature created a single offense for which multiple punishments are prohibited. *Id.* at 692-694. When the Legislature does explicitly authorize multiple punishments for the same conduct, these punishments are not violative of the Fifth Amendment even if they do not pass the *Blockburger* test. See *id.* at 695.

3. *Double jeopardy analysis under the Massachusetts frame-work.* a. *Historical development.* Although not derived from the Declaration of Rights, Massachusetts has "long recognized a State common-law and statutory prohibition against double jeopardy." *Powers* v. *Commonwealth*, 426 Mass. 534, 537 n.5 (1998). See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974). "The standard in Massachusetts for determining whether multiple convictions stemming from a single event are duplicative was first articulated over a century ago, in *Morey* v. *Commonwealth*, 108 Mass. [at] 434." *Commonwealth* v. *Cabrera*, 449 Mass. 825, 827 (2007). Under *Morey* and its progeny, "a defendant may properly be punished for two crimes arising out of the same

course of conduct provided that each crime requires proof of an element that the other does not." *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002). Thus, "[i]n this analysis, '[t]he actual criminal acts alleged are wholly irrelevant to the application of [the rule]; rather, the elements of the crimes charged are considered objectively, abstracted from the facts . . . .' " *Commonwealth* v. *Cabrera*, 449 Mass. at 827, quoting from *Commonwealth* v. *Jones*, 441 Mass. 73, 76 (2004).

In *Commonwealth* v. *Catania*, 377 Mass. 186, 191 (1979), the Supreme Judicial Court, resting on the fact that the evidence presented at trial to support each of two statutory offenses was the same, concluded that one was a lesser included offense of the other, notwithstanding the fact that the two offenses contained discrete elements. The court later overruled the reasoning in *Catania*, stating that it was error to "look[] beyond the required *elements* of the statutory offenses . . . to the actual evidence introduced at the defendant's trial" (emphasis supplied). *Commonwealth* v. *Crocker*, 384 Mass. 353, 359, 361 (1981). "The error in *Catania* was important; it demonstrated that a departure from the elements-based *Morey* test in favor of a judicial assessment of the evidence at a trial of multiple offenses (the so-called 'conduct-based' test) . . . 'runs the risk of unnecessary intrusion into the legislative prerogative to define crimes and fix punishments.' " *Commonwealth* v. *Oliveira*, 53 Mass. App. Ct. 480, 484 (2002), quoting from *Commonwealth* v. *Crocker*, *supra* at 359.

Perhaps the best explanation comes from *Commonwealth* v. *Alvarez*, 413 Mass. 224 (1992), in which the Supreme Judicial Court characterized the *Morey* rule as subservient to legislative intent. The court explained that the *Morey* rule

> "is a principle of statutory construction designed to aid in the judicial interpretation of criminal statutes where the Legislature has not expressed an intent as to consecutive punishments."

*Id.* at 232. This view of *Morey* is consistent with the United States Supreme Court's view of *Blockburger*. As the *Morey* rule is merely a guide to statutory construction and a method of discerning legislative intent, it gives the judiciary no authority

to second-guess the Legislature or to reverse convictions of non-cognate offenses, even if the predicate conduct is unitary. See *Whalen* v. *United States*, 445 U.S. at 692-695. Compare *Commonwealth* v. *Oliveira*, 53 Mass. App. Ct. at 484-485. The framework can be summarized as follows: generally, convictions of two cognate offenses must be based on separate and distinct acts unless the Legislature has explicitly authorized cumulative punishments. See *Commonwealth* v. *Alvarez*, 413 Mass. at 232. In contrast, under the *Morey* rule, convictions of two noncognate offenses are permitted, even where the convictions are based on a single predicate act. See *Morey*, 108 Mass. at 434.

b. *The* St. Pierre *line of cases.* In spite of the principles articulated in *Crocker, Alvarez,* and *Oliveira,* both this court and the Supreme Judicial Court have, at times, departed from that line of cases. See, e.g., *Commonwealth* v. *Valliere*, 437 Mass. at 371; *Commonwealth* v. *Jones*, 441 Mass. at 76; *Commonwealth* v. *Cabrera*, 449 Mass. 825 (2007); *Commonwealth* v. *Morin*, 52 Mass. App. Ct. 780 (2001). Rather than applying an elements-based test and focusing on legislative intent, we have issued decisions that succumbed to the *Catania* error by conducting a fact-based examination. In so doing, a line of cases has developed that is incompatible with the doctrinal principles of *Morey* and *Blockburger*.

The source of the misdirection in our case law as to double jeopardy principles appears to be dictum in *Commonwealth* v. *St. Pierre*, 377 Mass. 650 (1979). There, the court commented:

"This court recognized in *Commonwealth* v. *Gallarelli*, 372 Mass. 573, 578-579 (1977), that the [*Morey*] rule could be manipulated by a prosecutor so as to harass and oppress. That was said in the context of successive prosecutions, but there may be an element of harassment in the use of multiple charges in the same prosecution when they open up a prospect of 'double' punishment for crimes not duplicative in a technical sense, but so closely related in fact as to constitute in substance but a single crime."

*Id.* at 662-663.[5]

---

[5]It is noteworthy that in *St. Pierre*, 377 Mass. at 662-663, the Supreme Judicial Court did not cite authority for this dictum. The court cited to a law

While the *St. Pierre* court suggested, in dictum, that the *Morey* rule is not perfect, it never indicated that the rule should be changed. Nor did it indicate that a separate acts analysis is warranted. In warning that it might be possible for a prosecutor to circumvent the *Morey* rule when charging defendants, the court did not suggest that the existence of such a possibility justified adoption of a conduct-based analysis. Nowhere in *St. Pierre* did the court reason that a fact-based test could or should supersede a legal elements-based test. See *St. Pierre*, 377 Mass. at 662-663.

*Commonwealth* v. *Thomas*, 401 Mass. 109, 119-120 (1987), in its own dictum, was the first case in which the Supreme Judicial Court incorporated *St. Pierre's* dictum, by referring to it after determining, by an elements-based test, that the defendant's convictions of both indecent assault and battery and rape were duplicative because the former is a lesser included offense of the latter. It is important to note that the *Thomas* court applied the conduct-based analysis to cognate offenses, where one was typically a lesser included offense of the other, and offered no guidance as to how a conduct-based analysis should be conducted. Nor did the court discuss whether such an analysis would be proper when a defendant is convicted of two noncognate offenses.[6] The dictum in *Thomas*, joined with that of *St. Pierre*, created a detour.

It is implausible that the Supreme Judicial Court intended to erode, through the casual use of language, our well-established and historic scheme for analyzing double jeopardy principles in the duplicative convictions context. After *Thomas*, cases began to appear which assumed that a conduct-based approach may be used to determine whether convictions are duplicative, even for

journal article and *Commonwealth* v. *Gallarelli*, 372 Mass. 573 (1977). In *Gallarelli*, however, the court majority noted that, as opposed to *Morey's* "same evidence" rule, the "same transaction" rule does not have broad support among other States; the court further commented that it was not "inclined as a matter of policy to modify [its] approval of the 'same evidence' rule as first clearly enunciated in *Morey*." *Gallarelli, supra* at 578.

[6]Furthermore, the reference to conduct-based analysis was not relevant to the *Thomas* court's conclusion that the defendant's convictions were duplicative. See 401 Mass. at 119-120. Rather, the brief mention of *St. Pierre* reflects a common convention in appellate writing — that of employing a "belt and suspenders" approach, by providing alternative grounds for the court's holding.

noncognate offenses. See, e.g., *Commonwealth* v. *Valliere*, 437 Mass. at 371; *Commonwealth* v. *Keohane*, 444 Mass. 563, 574-575 (2005); *Commonwealth* v. *Cabrera*, 449 Mass. at 828; *Commonwealth* v. *Morin*, 52 Mass. App. Ct. at 787.

In *Commonwealth* v. *Gallant*, 65 Mass. App. Ct. 409 (2006), we noted that "it is difficult to see how such a conduct-based test could ever possibly mesh with the *Morey* standard" and, further, that since the *Morey* rule "*only* applies to situations in which two or more convictions arise out of precisely the same act, let alone acts 'closely related in fact,' " a conduct-based analysis would render the *Morey* standard "wholly superfluous." *Id.* at 414-415.

In *Gallant*, we attempted to foreclose future misreliance on the *St. Pierre* dictum by stating the following:

> "[T]he Supreme Judicial Court's approach [to determining whether convictions are duplicative] appears to indicate that the *Morey* rule, with its strict focus on elements, *renders any conduct-based inquiry irrelevant*; that is to say, provided the *Morey* test is satisfied, no inquiry into a defendant's conduct is required. Such an interpretation conforms to the . . . admonition in *Jones*: '[In determining whether convictions are duplicative,] the elements of the crimes charged are considered objectively, abstracted from the facts.' " (Emphasis added.)

*Commonwealth* v. *Gallant, supra* at 415, quoting from *Commonwealth* v. *Jones*, 441 Mass. at 76.

I agree with the reasoning in *Gallant*. Cases such as *Valliere*, *Keohane*, and *Cabrera* suggest that a conduct-based inquiry is sometimes proper in cases where a defendant is convicted of two noncognate offenses. This suggestion, in itself, belies traditional double jeopardy principles. To perpetuate this trend seriously separates our jurisprudential principles from that of the Federal courts and the courts of the other States.[7]

4. *Indecent assault and battery on a child and assault with*

---

[7] A majority of States have adopted the *Blockburger* test. See, e.g., *State* v. *McGill*, 213 Ariz. 147, 153 (2006), cert. denied, 549 U.S. 1324 (2007); *State* v. *Thompson*, 343 Ark. 135 (2000); *Kelso* v. *State*, 961 So. 2d 277, 281-282 (Fla. 2007); *People* v. *Sienkiewicz*, 208 Ill. 2d 1 (2003); *State* v. *Schoonover*, 281 Kan. 453, 493-498 (2006); *Holbrook* v. *State*, 364 Md. 354, 369-370

*intent to rape a child.* "It is the prerogative of the Legislature, in the course of defining offenses and fixing punishments, and in furtherance of public policy goals, to punish related offenses separately." *Commonwealth* v. *Cabrera*, 449 Mass. at 828, citing *Commonwealth* v. *Jones*, 441 Mass. at 75. Compare *Commonwealth* v. *Jones*, 382 Mass. 387, 394 (1981).

The statutes defining the crimes at issue in this case fulfil different legislative policy goals. The crime of indecent assault and battery on a child under the age of fourteen reinforces the Legislature's (and, therefore, society's) goal that children not be molested in a sexual way and fulfils the policy goal of protecting against and punishing the actual indecent touching of a child. Compare *Commonwealth* v. *Oliveira*, 53 Mass. App. Ct. at 486 (indecent assault and battery on a person over age fourteen). The charge of assault with intent to rape a child under the age of sixteen fulfils the policy goal of protecting against and punishing "the threat of a violent, unwanted invasion of a [child's] body." *Id.* at 486-487. Compare *id.* at 487 ("Each of these crimes has distinct, independent importance, and we see no basis for the conclusion that the Legislature intended the courts to disregard an unwanted, indecent touching of the victim simply because, in one episode, the defendant also assaulted the same person, intending to rape her. The battery — the indecent touching which is not an element of [assault with intent to rape] — cannot be overlooked").

Thus, the omission of a charge on separate and distinct acts did not create a substantial risk of a miscarriage of justice.[8] See,

(2001); *People* v. *Ream*, 481 Mich. 223, 240-242 (2008); *Graves* v. *State*, 969 So. 2d 845, 848 (Miss. 2007); *State* v. *Winkler*, 266 Neb. 155, 159 (2003); *Mooney* v. *State*, 990 P.2d 875, 883 (Okla. Crim. App. 1999); *State* v. *Easler*, 327 S.C. 121, 128, 131-132 (1997); *State* v. *Johnson*, 739 N.W.2d 1, 7 (S.D. 2007); *State* v. *Prior*, 181 Vt. 564, 566-567 (2007); *State* v. *Gocken*, 127 Wash. 2d 95, 107 (1995); *State* v. *Kurzawa*, 180 Wis. 2d 502, 524, cert. denied, 512 U.S. 1222 (1994). Compare *State* v. *Ezell*, 159 N.C. App. 103, 109 (2003) ("[W]e are not required to start and end our inquiry with a *Blockburger* analysis of elements. *Blockburger* is an aid to determining legislative intent in that it creates a presumption that . . . may be rebutted"); *State* v. *Rance*, 85 Ohio St. 3d 632, 636, 639 (1999) (where analysis under State's multi-count statute and *Blockburger* are functionally equivalent, "unnecessary to resort to . . . *Blockburger* test").

[8]Moreover, even if we take the "belt and suspenders" approach that often leads our analysis astray and even if *Oliveira* did not apply, and even if the

e.g., *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990); *Commonwealth* v. *Black*, 50 Mass. App. Ct. 477, 478-479 (2000). Accordingly, I would affirm the adjudications of delinquency by reason of both indecent assault and battery on a child and assault with intent to rape a child.

language of *St. Pierre* is applied to the juvenile's actions and not to the elements of the crimes he is charged with, the actions here are not so related as to constitute in substance but a single crime. See *Commonwealth* v. *Jones*, 441 Mass. at 76, quoting from *Commonwealth* v. *St. Pierre*, 377 Mass. at 662-663 (defendant can be sentenced for violation of two noncognate criminal statutes "unless it can be said with certainty that [the defendant's] actions were 'so closely related in fact as to constitute in substance but a single crime' "). Although the actions shared a point in time, they were different in form and intent. By itself, a close temporal nexus between discrete acts does not automatically blend those acts into a single crime. Compare *Commonwealth* v. *Mamay*, 407 Mass. 412, 418-419 (1990) (defendant's inserting his tongue into the victim's mouth constituted indecent assault and battery, while his tearing down her pants, together with anal and vaginal penetration, constituted "two distinct acts of rape"); *Commonwealth* v. *King*, 445 Mass. 217, 225-226 (2005), cert. denied, 546 U.S. 1216 (2006) (scratching of the defendant's penis underlay the indecent assault and battery conviction, while licking of the defendant's penis underlay the rape conviction); *Commonwealth* v. *Fitzpatrick*, 14 Mass. App. Ct. 1001, 1003 (1982) (affirming judgments as to both indecent assault and battery and rape, observing that "[a]n indecent contact which is separate from and not incidental to the act of penetration does not merge with the crime of rape to constitute but a single offense any more than a second penetration of the same victim during the same criminal episode constitutes but one rape"); *Commonwealth* v. *Lord*, 55 Mass. App. Ct. 265, 272-273 (2002) (separate convictions of assault and battery, assault and battery by means of a dangerous weapon, and indecent assault and battery affirmed where the defendant sprayed the victim with mace, threw her against a wall and battered her with his hands and feet, and then attempted to remove her underwear); *Commonwealth* v. *Kopsala*, 58 Mass. App. Ct. 387, 393 (2003) (convictions of rape and indecent assault and battery not duplicative where the evidence that the defendant "pulled up the victim's shirt, exposing her breasts, unbuttoned her jeans and pulled them off, and removed her panties" constituted a "separate and distinct act from the penetration"); *Commonwealth* v. *Johnston*, 60 Mass. App. Ct. 13, 22 (2003) (pulling the victim's hair constituted assault and battery, and was distinct from the act of rape). Contrast *Commonwealth* v. *Morin*, 52 Mass. App. Ct. at 787-788 (defendant could not be sentenced on both assault with intent to rape and indecent assault and battery).

Indeed, the possibility of duplicative convictions here is minimal in view of the evidence that three acts occurred: (1) the victim was pushed to the bed and buried her face in the bed; (2) her pants were taken down; and (3) the juvenile got on top of her and "hump[ed]" her. Where the jury were properly instructed on the elements of each crime, the verdict slips reinforced the distinctions, and the jury found the juvenile not guilty of rape, the conviction of indecent assault and battery on a child is not duplicative of that of assault with intent to rape a child.